No. 56.—FREDERICK A. WILLIAMS, plaintiff in error, *vs.* DANIEL R. TURNER and JAMES L. MAYSEN, defendants.

[1.] When the cross-questions in interrogatories grow out of the direct examination, and are not fully answered, they will be rejected.

[2.] A witness cannot be discredited, by proof of statements made out of Court, irreconcilable with his testimony, until he has first been examined as to the time, place, person and circumstances involved in the statements proposed to be proven.

[3.] Seven years exclusive and continued possession and enjoyment of a ferry right, is, in this State, presumption of a grant.

[4.] E agrees with T, that he will advance to T the purchase money for a lot of land, free of interest for one year; in consideration of which, T agrees to secure the ferry right on said land, for the use of E; the contract being executed, and the title of the land taken in the name of T: *Held*, that an implied trust is created, as to the ferry right, and that T holds it as trustee for E.

In Equity. DeKalb Superior Court. Tried before Judge HILL, March Term, 1849.

In 1823, John B. Nelson established a ferry across the Chattahoochee river, the east landing being on a fraction purchased by him from the State—No. 20—and to which fraction, a grant issued to him in 1827, when the last instalment was paid. The west landing was upon lands then occupied by the Indians. Nelson continued the ferry during his life, and after his death, it was kept up for the benefit of his heirs. When the lands on the West bank of the Chattahoochee were drawn by lottery, the guardian of Nelson's orphans purchased the lot on which the west landing was—No. 399—and several lots above and below, adjoining.

In 1844, defendants in error erected another ferry, about half a mile above Nelson's ferry, on fraction No. 284, by which the profits were greatly reduced.

In 184–, Frederick A. Williams, who had intermarried with one of the heirs of John B. Nelson, and had purchased the interest of the other in the land and ferry, filed a bill to enjoin the defendants in error from using their ferry, alleging the foregoing facts. And farther, charging that William Ezzard, the guardian of Nelson's orphans, advanced to Daniel R. Turner the money

Williams *vs.* Turner and another.

to purchase fraction No. 284, upon an agreement, that in consideration of keeping the money for one year, without interest, he would secure to Nelson's orphans the ferry right on the fraction No. 284.

The answer of Daniel R. Turner denied the agreement set out in the bill, and denied that the possession and use of Nelson's ferry had been uninterrupted for twenty years, and alleged that the position of the ferry had been changed some 400 yards.

On the trial at March Term, 1849, it was in evidence, that the land on which was the west landing of the ferry, was rented out by the agent of the State, during the years 1831 and 1832, to others than Nelson ; and during the same years, the place where defendants' ferry now is, was also rented out and kept as a public ferry.

The testimony, with regard to the agreement between Turner and the guardian of Nelson's orphans, was somewhat conflicting.

The testimony of A. Brooks was rejected by the Court, on the ground that the second cross interrogatory was not answered, viz : " If you were acquainted with Nelson's ferry, say whether there is a ferry now at the same place; and who had control of it in the years 1831 and 1832 ; and under whom they held it ?" The answer was, " that at that date, to-wit: in the years 1831 and 1832, he knew nothing of the transaction of said ferry."

To this ruling of the Court, complainant excepted.

James Wallis swore, that he had been acquainted with Nelson's ferry, twenty-three years previous to March, 1847. Defendants offered to prove by Hiram Embry, that he saw Wallis at his (Embry's) father's house, in DeKalb County, in 1828, about eight miles from the ferry, and Wallis told him it was the first time he had ever been in DeKalb County, for the purpose of discrediting the testimony of Wallis. Complainant objected, because a foundation had not been laid, by first examining Wallis, as to the fact of making such statements.

The Court overruled the objection, and complainant excepted.

Complainant's counsel requested the Court to charge the Jury, " that if complainant and those under whom he claimed, had used, had and enjoyed their ferry, for seven years and upwards, without any interruption, the law would presume a grant for the same."

The Court declined so to charge, but charged, on the contrary,

that to entitle the complainant to a prescriptive right, he must show that he and those under whom he claimed, had been in the peaceable, continued and exclusive possession of the ferry, for twenty years; and if there had been a public ferry kept at the place where defendants' ferry now is, in the years 1832 and 1833, this would be such an interference with the rights of complainant, as would destroy his prescriptive right to his own ferry.

To which charge and refusal to charge, complainant filed exceptions.

Counsel for complainant also requested the Court to give in charge, that " if the contract alleged in the bill was made, the money advanced and Turner purchased the fraction No. 284, in pursuance of the contract, the law constituted him a trustee for Nelson's children, so far as the ferry right in said fraction is concerned.

The Court declined so to charge, but on the contrary, charged that this was not a case of implied or resulting trust, but that such a contract was within the operation of the Statute of Frauds and Perjuries.

To this charge, and refusal to charge, complainant excepted.

EZZARD and CALHOUN, for plaintiff in error.

MURPHY aud McDONALD, for defendants.

*By the Court.*—NISBET, J. delivering the opinion.

[1.] The testimony of Brooks was properly rejected. The cross question grew fairly out of the direct examination. It is answered only in part. The inquiry, " whether there is now a ferry at the same place," is not answered at all. It will not do to permit a witness to judge what questions he shall answer, and what not; unless the questions are such, as by law, he is not bound to answer, he must answer all. It is for the Court to determine, when the testimony is brought in, what answers are legal, and what not. This is more important, when the testimony is taken by commission. As to the materiality of the answer, if had, it is not for us to determine; it might be material; it might, in the course of the trial, become material, in connection with other testimony.

Williams *vs.* Turner and another.

[2.] We think that the testimony of Embry, to discredit the witness, Wallis, ought not to have been admitted, without first laying a foundation for its admission, by examining Wallis as to the statements sought to be proven by Embry.   Wallis swore in Court, that he had been acquainted with Nelson's ferry, for twenty-three years previous to March, 1847.   Embry was offered to prove, that in 1828, Wallis was at his father's house in DeKalb County, about eight miles from the ferry, and then and there told him that it was the first time he had ever been in DeKalb County, and that he was there in search of a home.   This testimony could have had but one object, to-wit : to discredit Wallis, by proof of statements made by him out of Court, irreconcilable with his statements made under oath, in Court.   This is a legitimate manner of discrediting a witness, yet it is allowable only upon terms. A witness cannot be discredited, by proving statements out of Court, contradictory of his testimony in Court, unless the statements are as to such matters as are relevant to the issue.   The statements in this case are about matters material in the issue. But before the witness can be in this way discredited, it is, in general, necessary to ask him as to the time, place and person involved in the supposed contradiction.   His attention must be drawn to the particular time, place and other circumstances of the statements.   It is not enough to inquire of him, generally, whether he has made such and such statements ; his memory may be at fault, and it ought to be refreshed, by calling his attention to particulars.   This is but mere justice to the witness.   As the direct intent and effect of proving the outdoor statements, is to impeach his veracity, common justice requires that he shall have the opportunity of correcting and explaining his evidence, as well as to explain the nature, circumstances, meaning and design of what he is proved elsewhere to have said. *Angus vs. Smith,* 1 *M. & Malk.* 473.   *Crowly vs. Page,* 7 *C. & P.* 789.   *Regina vs. Shelland,* 9 *C. & P.* 277.   *Regina vs. Holden,* 8 *C. & P.* 606.   *The Queen's Case,* 2 *Bro. & Bing.* 313, 314.   *Cow. & Hill's notes to Phil. Ev. vol.* 2, *page* 774.   1 *Phil. Ev.* 308.   9 *C. & P.* 483, 489.   11 *Ad. & El.* 803.   1 *Greenlf. Ev.* §462.

[3.] The bill in this case, was filed to enjoin the defendants from the use of a ferry on the Chattahoochee river, upon the ground, first, that the complainants are the owners of an ancient ferry on that stream, to which the ferry of the defendants is inju-

rious. The plaintiffs showing no grant from the State, or license from the Inferior Court, relied upon proof of a grant by pre-scription. What length of time of undisturbed possession and en-joyment will, in this State, create a presumption of a grant, became a question. The complainant requested the Court to instruct the Jury, that "If the complainant and those under whom he claimed, had used, had and enjoyed their ferry, for seven years and upwards, without any interruption, the law would presume a grant for the same;" which he declined to do, but instructed them, that "to entitle the complainant to a prescriptive right, he must show that he and those under whom he claimed, had been in the peaceable, continued and exclusive possession of the ferry, for twenty years," &c.

To the declining of the Court to charge, as requested, and to the charge given, the complainant excepted. In our judgment, in this State, a grant will be presumed, from seven years' exclu-sive and uninterrupted possession and enjoyment of an incorpore-al hereditament.

The right of ferry is a franchise; that is to say, the ripa-rian proprietor has not, as an incident to the ownership of land, the right to erect a ferry, and charge and collect toll. So far as it does not interfere with public rights, as of navigation, it is inci-dent to the title to lands, and may be exercised for private pur-poses. Public ferries are for public convenience, and the grant-ing or withholding the right to establish them, is an attribute of sovereignty. The power to grant a ferry right, is in the Legis-lature. By law, the Inferior Court is empowered to authorize it, but the paramount control over the whole subject, is retained by the Legislature. The Legislature may grant as many ferry rights as it pleases. One grant to A does not preclude another to B ; and if A, being the first grantee, is injured by B's ferry, he has no right of action; for it is *damnum absque injuria.* But if A has a grant, and is injured by B's ferry, erected on his own lands, without a grant, he is entitled to recover damages, to the extent of his injury. See these principles fully and ably discussed by *Lumpkin, J.* in *Young & Calhoun vs. Harrison & Harrison,* 6 *Ga. R.* 130.

The defendants here show no grant. The plaintiff claims a grant by prescription.

In England, 20 years' adverse and uninterrupted enjoyment of

an incorporeal hereditament, in analogy to the Statute of Limitations, presumes a grant and gives a right.    By Statute of *James,* in England, 20 years is the limitation to the right of entry upon land.    Limitation Acts protect the possession of defendants, and also give title to plaintiffs.   *See 5 Gco. R.* 39.   *Ib.* 261.

In the States of this Union, grants are presumed to incorporeal hereditaments, easements and franchises, from lapse of time, in analogy to the Limitation Acts, as to land.   The English term of 20 years, notwithstanding the State Limitation Acts may be different, is adopted as in South Carolina, in some of the States.   1 *Nott & McCord,* 387 ; *also,* 1 *Cheves' L. & Eq. R.* 2.

But most generally, the limitation term is also the prescriptive term.   3 *Kent's Com.* 442.   1 *Greenlf. Ev.* 20, *note* 1.   *Cooledge vs. Learned,* 8 *Pick.* 504.   *Melvin vs. Whiting,* 10 *Pick.* 295. *Ricard vs. Williams,* 7 *Wheat.* 100.   *Angel on Water Courses,* 60.

We adopt the limitation term of our Statute, to-wit : seven years, as best in policy, and confessedly right upon principle.

[4.] The contract charged in the bill between Judge *Ezzard,* as guardian of the minors of Nelson and Turner, was this : Ezzard agreed to advance to Turner, a sum of money for the purchase of lot No. 284, upon which is the defendant's ferry landing on the western bank of the river ; the use of which he was to have for one year, *free of interest ;* and in consideration of which use, he, Turner, agreed that he would secure to Nelson's orphans the ferry right on that lot of land.   The bill charges that the contract was executed on Ezzard's part, and that Turner bought lot 284, taking the title to himself.   The complainant insists, that by this contract, if proven, there was a resulting trust created in behalf of these minors, and that Turner holds the ferry right, as their trustee, and, of course, has no right to its use ; and requested the Court so to instruct the Jury.    The presiding Judge declining to do this, charged the Jury that " this was not a case of a resulting or implied trust, but that such a contract was within the operation of the Statute of Frauds and Perjuries."    Whereupon, the complainant excepted.

We think, if this contract be proven, it creates an implied trust, which is expressly excepted from the operation of the Statute of Frauds.   If A buys lands with the money of B, and takes the title to himself, the law implies a trust in favor of B, and A holds the title as his trustee.    Here, the land is Turner's, and with the title

to the land, goes the right to apply for and use the franchise; also, the right of building a ferry on it, for his private use, at Law. But how does a Court of Equity construe the contract? Why, thus: The interest on the money paid for the land, belongs to the minors. That, by the agreement, is paid for the ferry right. Turner, with this interest, buys the ferry right: the law creates a trust in his hands, for the benefit of the minors; he is their trustee. This doctrine is well settled in Chancery, and has its origin in the natural presumption, in the absence of all rebutting circumstances, that he who supplies the money, means the purchase for his own benefit, rather than the benefit of another. In this case, the agreement is, that the purchase of the ferry right is for the benefit of the minors, who advanced the money. That the title should be in Turner, was a matter of convenience and arrangement. The advance to Turner, of the use of the money for one year, is equivalent to the advance of lawful interest thereon, for that length of time, in cash. 2 *Story's Eq.* §1201. 2 *Fonb. Eq. b.* 2, *ch.* 5, §1, *n. a.* 3 *P. W.* 20. 7 *Vesey*, 425. . 4 *Kent's Com.* 307, 3 *ed.* 2 *Vern.* 644. 1 *Atk.* 618, 619, 620. 2 *Bro. Ch. R.* 580.

Let the judgment be reversed.