THOMSON–HOUSTON ELECTRIC CO. v. JEFFREY MANUF'G CO. et al.

(Circuit Court, S. D. Ohio, E. D.    December 7, 1897.)

No. 793.

TAKING OF DEPOSITIONS—OBJECTIONS TO TESTIMONY—MISCONDUCT OF COUNSEL.
    In taking depositions in an equity suit, counsel cannot assume to pass upon questions of the competency, materiality, and relevancy of testimony, and instruct his witnesses not to answer questions put to them on cross-examination; and where a witness, in obedience to such instructions, refuses to answer, his entire deposition will be stricken from the files.

This was a suit in equity by the Thomson-Houston Electric Company against the Jeffrey Manufacturing Company and others for alleged infringement of a patent. Motion to strike deposition from the files.

Betts, Hyde & Betts, for complainant.
H. H. Bliss and John R. Bennett, for respondents.

SAGE, District Judge.   Defendants move to strike from the files the entire deposition of witness E. M. Bentley, called and examined as an expert by the complainant on the prima facie case, or to compel him to answer 33 questions put by counsel for the defendants on cross-examination, and which he declined to answer under advice of counsel for the complainant.   All these questions were objected to as immaterial, irrelevant, and hypothetical.   Counsel for complainant insist that the issue in the case involved in this matter is whether defendants' construction, as proved by Mr. Bulkley, a witness for complaint, is an embodiment of the claim in suit.   The suit is upon patent No. 495,443, for traveling contact for electric railways, applied for by Charles J. Van Depoele, and assigned to complainant.

The witness Bentley, in his direct testimony, defines the invention in controversy as follows:

"The device itself is characterized by a long swinging arm, extending obliquely upward from the car to the conductor.   *   *   *   The long swinging arm carried at its outer end a contact device, which is made to bear on the underside of the conductor, while its inner end of the same arm is joined to the car, on both a transverse and vertical axis, so that the contact device on its outer end may be swung laterally through a wide arc, and may also be depressed vertically through a considerable distance.   This arrangement allows the contact device to *   *   *   follow readily in its variations, vertically and laterally, the line of the conductor.   *   *   *"

In cross-examination he was asked:

"What would you suggest as the proper average height of the conductor wire above the cars?

"A. At present, in street-car work, the conductor is some six or eight feet above the roof.

"29 xq. And what is the length of the extreme play on a vertical line of a trolley wheel, and which you would advise as the best to meet the ordinary requirements?

"A. In some roads the height of the trolley wire varies from fourteen to twenty-four feet, and the trolley wheel, to have a capacity for meeting the extreme condition, should have a vertical play of ten feet."

He was then asked to state the length of defendants' device,—which was used in the tunnel of a coal mine,—as shown upon their exhibit ("Sketch Vintondale Locomotive"), and answered that the arm was only three feet long, and that on that locomotive, if it was three feet and a half between the axles as shown by said sketch, the trolley poles were about three feet long.   Further examined as to the structure of defendants' plant, he answered as follows:

"Then, assuming that the coal is of a thickness above the average, we will say six feet, for anything now within our knowledge, it may be true, may it not, that the trolley wheel on that Vintondale locomotive never vibrates more than six inches relative to the top plane of the locomotive, may it not?

"A. Of course, if the trolley wire is so arranged with reference to the track that it never varies more than six inches from its level with relation thereto, the arm would not vibrate more than six inches."

Counsel for the defense then sought to interrogate him with respect to the application of the patent, and of the invention to defendants' mechanism, as follows:

"31 xq. Let us then assume from now on that a commercially successful car constructed on the plan of this illustrated in the patent in suit would require

a trolley equipment which would permit the trolley wheel to vibrate through a distance of ten feet.

"Please take the drawing which I now hand you, which delineates precisely the same parts and arrangement that is shown in the drawings in this Van Depoele patent in suit, except that the trolley wheel is limited to a vibration of six inches, and I ask whether a construction in accordance with this drawing would contain the subject-matter of claims 2, 4, 8, 12, and 16.

"(Counsel for complainant objects to the question as immaterial and hypothetical, and is not an issue raised by any of the pleadings in this case, and instructs the witness that he need not consider any drawings or structure which is not properly proven in this case.)

"A. In view of the instruction of counsel, I decline to consider your drawing.

"32 xq. You have already in the record in this case stated under oath as follows:

"'A long arm mounted on top of the car carrying a grooved wheel at its outer end, and continually pressed upward against the undersurface of the wire, and having capacity of swinging through several feet on a vertical pivot, and of also swinging through a number of feet upon a horizontal hinge or pivot, was the thing which made overhead systems of electric railroads a success for general use.'

"Disliking to indulge in hypothetical questions which cannot be exactly and accurately delineated, I have made this drawing for the purpose of getting a clear definition of your understanding of the invention in controversy, and of the scope of the claims which you have referred to in your direct examination. My question, coupled with this drawing, I believe to be as accurate and specific as it is possible to put it in order to ascertain your meaning when using on this record, as you have, such terms as 'a long arm,' and an arm 'swinging through a number of feet on a horizontal hinge or pivot.' I am desirous, on behalf of the defendants, of ascertaining to what extent these matters enter into the invention in controversy.

"And, with this explanation, I repeat the question, and ask whether, first, this drawing is sufficiently intelligible for you to understand the question.

"(Complainant's counsel requests defendants' counsel to state the number of the question and answer of the witness from which he purports to have made a quotation.

"(Counsel for defendants replies that, if the last note of complainant's counsel is intended to challenge proof of identity as to this witness being the same party who filed two or three different affidavits with the preliminary injunction papers, he replies that he is astonished at any such effort, and supposed that would be waived. In direct reply to the last inquiry, he states that the above quotation was made from the affidavit of one E. M. Bentley, filed in this record, with the papers accompanying the motion for preliminary injunction. To assure himself, he temporarily withdraws the last question, and presents the following:)

"33 xq. Are you the same E. M. Bentley who filed three affidavits in this cause, and which were used at the hearing of the motion for preliminary injunction?

"A. I made, I believe, three affidavits for use in this cause on the motion for preliminary injunction, and I presume they were filed and used.

"34 xq. Please turn to page 176 of the printed record of complainant, prepared for the presentation of the motion for preliminary injunction, and ascertain whether the quotation I have above made from the second affidavit is correct, and whether you made that statement.

"(Objected to, as calling for a merely fragmentary portion of the affidavit referred to, while the whole of the affidavit should be considered, and not merely a small portion thereof.)

"A. You have quoted correctly from my affidavit in this case.

"(Counsel for defendants here introduces in evidence the drawing handed with cross-question 31, and the same is marked 'Defendants' Exhibit, Drawing No. 1, F. M. A., Notary Public, Aug. 11, 1897.'

"(Complainant's counsel objects to the same, as immaterial, irrelevant, and incompetent, and not properly proven.)

"35 xq. Then I again ask you to take this drawing in evidence, now marked 'Defendants' Drawing No. 1,' and ask—First, whether the construction there

indicated is intelligible to you under the definition I gave above, and, secondly, whether a mechanism constructed in accordance therewith would fulfill the requirements presented in your language in your affidavit above quoted.

"(Complainant's counsel again objects to the question, as immaterial and irrelevant and hypothetical, in that the exhibit referred to has not been properly proven, nor is any issue raised thereon by any of the pleadings in this case, and instructs the witness that he need not consider or answer this question.

"A. I must decline to consider your drawing or answer the question.

"(Answers to xq.'s 31 and 34 are now objected to as not responsive, and in due time motion will be made by the defendants to strike the entire deposition from the record, because thereof.

"(Complainant's counsel states that he shall require the defendants to give due notice of said motion, and that he shall consider that, if such motion is not made prior to the beginning of the taking of defendants' proofs herein, he shall consider that the defendants have withdrawn their notice of motion.)

"36 xq. You have in your direct examination stated as follows:

" 'This contact device consists of a long swinging arm. The device itself is characterized by a long swinging arm extending obliquely upward from the car to the conductor, and taking the place of a flexible conductor cord, such as was commonly used. * * * The long swinging arm carries at its outer end a contact device, which is made to bear on the underside of the conductor, while at its inner end the said arm is joined to the car on both a transverse and a vertical axis, so that the contact device on its outer end, consisting ordinarily of a grooved roller, may be swung laterally through a wide arc, and may also be depressed vertically through a considerable distance.'

"And I fail to find in this language anything definite or exact as defining the terms 'long,' 'considerable distance,' etc.

"And, in order that I may get an accurate understanding of your meaning, I again call your attention to this drawing in evidence, marked 'Defendants' Exhibit Drawing No. 1,' and ask whether the subject-matter there shown conforms to your words above quoted.

"The drawing is presented for the purpose of avoiding purely hypothetical questions in mere words, and to assist in seeing exactly the meaning of my question, and is presented with the understanding on my part that it is an exact copy of the drawings which you have been discussing in the patent itself, with the one exception as to the length of the arm.

"(Complainant's counsel makes the same objection as made to the last question, and repeats the same instructions given to the witness as that given in respect to the last question, in view of the fact that the question is still hypothetical, as the exhibit referred to is not at issue in this case, and is not raised by any of the pleadings herein, nor is it properly proven.)

"A. I must again decline to express opinions in regard to the structure of Defendants' Exhibit Drawing No. 1.

"(Answer is objected to, as not responsive, and the notice for striking out is repeated.

"(Complainant's counsel makes the same statement as to notice given in respect to last answer.)

"37 xq. Does this exhibit, Defendants' Drawing No. 1, present matter which is immaterial to this controversy?

"(The same objections and instructions to the witness, and as a question for the counsel and the court to determine.)

"A. In view of the instructions of counsel, I will still decline to discuss the drawing in question.

"(Defendants' objections, and notice repeated.

"(Complainant's statement in regard to said notice repeated.)

"38 xq. Then you refuse to answer without knowing whether my question and the drawing illustrating it present anything material to this controversy; is that correct?

"A. I understand that the question of materiality is one of law, which is outside of my province, and I am following the instructions of complainant's counsel in declining to discuss the matter.

"39 xq. You mean you refuse to answer these questions without knowing whether or not this exhibit, Defendants' Drawing No. 1, clearly shows?

" 'An electric railway having in combination a car, a conductor suspended above the line of travel of the car, an arm pivotally supported on top of the car, and provided at its outer end with a contact engaging the underside of the suspended conductor, and a tension spring at or near the inner end of the arm for maintaining such upward pressure contact.'

"I thus quote the eighth claim of the patent, in order to eliminate the necessity of your remarks concerning your being the judge of 'materiality.' My question is this: You have refused to answer these questions without knowing whether this illustrative drawing exhibits the subject-matter of this quoted language or not; am I right?

"A. Yes, sir."

Throughout, counsel for complainant not only noted objections to the questions, but assumed to decide finally and conclusively as to the competency, materiality, and relevancy of testimony sought to be brought out upon cross-examination, and, taking the witness completely under control, instructed and compelled him to refuse to answer. In support of this extraordinary course of procedure, they cite Cleveland Faucet Co. v. Syracuse Faucet Co., 77 Fed. 210, and Consolidated Fastener Co. v. Columbian Fastener Co., 79 Fed. 800. But in each of these cases the testimony objected to was in the record, and was passed upon by the court. I know of no precedent for the proposition that counsel may play the role of chancellor, and, upon their own judgment, close the mouths of witnesses.

In Blease v. Garlington, 92 U. S., at page 7, the supreme court of the United States said:

"The examiner before whom the witnesses are orally examined is required to note exceptions, but he cannot decide upon their validity. He must take down all the examination in writing, and send it to the court with the objections noted. So, too, when depositions are taken according to the acts of congress or otherwise, under the rules, exceptions to the testimony may be noted by the officer taking the deposition, but he is not permitted to decide upon them; and when the testimony, as reduced to writing by the examiner, or the deposition, is filed in court, further exceptions may be there taken. Thus, both the exceptions and the testimony objected to are all before the court below, and come here upon the appeal as part of the record and proceedings there."

What is said of examiners in this extract applies with much greater force to counsel for the respective parties, retained as they are for partisan services, and therefore utterly incapacitated and unfit to exercise judicial functions in the case, however capable they might be if in a situation to be entirely unprejudiced and impartial. For the reasons stated in Blease v. Garlington, courts do not suppress testimony unless it be grossly and flagrantly impertinent and scandalous. The result of suppressing is to expunge the testimony from the record, which would deprive the party affected of opportunity for relief in the appellate court. See Smith v. Newland, 40 Ill. 100; McCabe v. Hussey, 2 Dow & C. 452; Appleton v. Ecaubert, 45 Fed. 281; Adee v. Iron Works, 46 Fed. 39; and Lloyd v. Pennie, 50 Fed. 4.

I will not say that upon an appeal to a federal judge a vexatious, unreasonable, or unconscionable examination of witnesses will not be put a stop to, or that a witness may not, pleading privilege, refuse to answer, and make an appeal to a federal judge for instructions necessary; but I do say that the assumption by counsel of authority such as has been claimed and exercised in this case will not

be tolerated in this court. The motion will be granted. The entire deposition of E. M. Bentley will be stricken from the files, and further testimony for the complainant (its time for testimony in chief having expired) will be allowed only upon the condition of its first reimbursing the defendants their costs and expenses by reason of the taking of said deposition.