Bell, J.
 

 The conclusions herein reached being in conflict with some of the previous pronouncements of this court we shall proceed to re-examine the questions involved.
 

 In this state a notary public, or a commissioner, has no inherent power to preside at the taking of depositions or to punish for contempt. The source of such authority must be found in the statutes.
 

 Section 11530, General Code, provides:
 

 “Depositions taken in and to be used in this state, must be taken by an officer or person whose authority is derived within the state; but,
 
 if for use elsewhere,
 
 they may be taken before a
 
 commissioner
 
 or officer who derives his authority from the state, district, or territory in which they are to be used.” (Italics ours.)
 

 Section 11510, General Code, provides:
 

 “Disobedience of a subpoena, a refusal to be sworn, except upon failure to pay fees duly demanded,
 
 and an unlawful refusal to answer as a witness
 
 or to subscribe a deposition, may be punished as a contempt of the court or officer by whom the attendance or testimony of the witness is required.” (Italics ours.)
 

 Section 11530, General Code, recognized the. authority of the Surrogate’s Court to appoint LeDow Johnston, as commissioner, to preside at the taking of the depositions; and Section 11510, General Code, em
 
 *92
 
 powered such commissioner to punish a witness for contempt for any violation of the statute. Such commissioner, however, was not invested with the ultimate authority to pass upon the relevancy, competency or materiality.of the' testimony.
 
 DeCamp
 
 v.
 
 Archibald,
 
 50 Ohio St., 618, 35 N. E., 1056;
 
 Ex parte Bevan,
 
 126 Ohio St., 126, 184 N. E., 393.
 

 Section 8, Article I of the Constitution of Ohio provides :
 

 “The privilege of the writ of
 
 habeas corpus
 
 shall not be suspended, unless, in cases of rebellion or invasion, the public safety require it.”
 

 The manner of its exercise is provided in Part Third, Title IV, Division IX, Special Proceedings, Chapter 2, Section 12161
 
 et seq.,
 
 General Code.
 

 Section 12161, General Code, provides:
 

 “A person unlawfully restrained of his liberty, or a person entitled to the custody of another, of which custody he is unlawfully deprived, may prosecute a writ of
 
 habeas corpus,
 
 to inquire into the cause of such imprisonment, restraint, or deprivation.”
 

 The General Assembly of Ohio has limited the power of the courts in
 
 habeas corpus
 
 proceedings by Section 12165, General Code, as follows:
 

 “If it appears that the person alleged to be restrained of his liberty is in custody of an officer under process issued by a court or magistrate, or by virtue of the judgment or order of a court of record, and that the court or magistrate had jurisdiction to issue the process, render the judgment, or make the order, the writ shall not be allowed; or, if the jurisdiction appears after the writ is allowed, the person shall not be discharged by reason of any informality or defect in the process, judgment, or order.”
 

 Therefore, if the witness, Fred J. Martin, Jr.,
 
 unlawfully refused to answer any of the questions
 
 here in dispute, the commissioner had jurisdiction to make the
 
 *93
 
 order and the writ should have been denied; on the other hand if the refusal of the witness to answer was not unlawful the writ should have been granted. This calls for an examination of the twenty-five questions, and for convenience they will be considered in three separate groups:
 

 (1) Three questions, Nos. 133, 723 and 727, to each of which objection was made and the commissioner at no time ordered the witness to answer.
 

 (2) Thirteen questions, Nos. 46, 132, 136, 192, 728, 730, 735, 745, 756, 917, 919, 921 and 923, to each of which objection was made and upon advice of counsel the witness refused to answer, the claim. of counsel being that the testimony sought was not relevant, competent or material.
 

 (3) Nine questions, Nos. 260, 261, 263, 654, 686, 687, 695, 709 and 784, to each of which the objection was grounded upon the claim of privilege.
 

 The first group presents little difficulty. We agree with the contention of counsel for the petitioner that upon the taking of a deposition a witness cannot lawfully be committed for contempt for failure to answer a question until after being ordered to answer by the presiding officer he refuses so to do.
 
 DeCamp
 
 v.
 
 Archibald,
 
 supra;
 
 Ex parte McKee,
 
 18 Mo., 599.
 

 The second group involves the refusal of the witness to answer, upon the advice of his counsel, upon the ground that the testimony sought was not relevant, competent or material to the issues.
 

 In the course of orderly procedure, after objection, the witness, when ordered, should have answered the questions, and the questions, objections and answers should have been submitted to the Surrogate’s Court of New York county for decision.
 
 Bradley
 
 v.
 
 Veazie,
 
 47 Me., 85;
 
 DeCamp
 
 v.
 
 Archibald, supra; Finn
 
 v.
 
 Winneshiek District Court,
 
 145 Iowa, 157, 123 N. W., 1066.
 

 However, the witness refused in each of the thirteen
 
 *94
 
 instances to answer, and by such action constituted himself
 
 the judge
 
 as to what testimony was relevant, competent and material.
 

 Did this conduct constitute an
 
 unlawful refusal to answer as a ivitnessf
 

 The conflict in the previous decisions of this court is apparent in the following cases:
 

 In
 
 DeCamp
 
 vi
 
 Archibald, supra,
 
 paragraph three of the syllabus, the court held:
 

 “Where the question propounded involves no question of privilege on the part of the witness, it is his duty to answer, if ordered by the notary to do so. The question of its competency is a matter for the determination of the court on the trial of the action in which the evidence is taken; and if he refuses to do so, when ordered, he may be committed as a contumacious witness.”
 

 Nest came the case of
 
 Ex parte Jennings,
 
 60 Ohio St., 319, 54 N. E., 262, in which it is said in the syllabus:
 

 “A witness whose deposition is being taken before an officer may refuse to testify to facts not relevant to the issues in the case in which the deposition is to be read, if the disclosure of such irrelevant facts would be injurious to the business of the witness; and, if imprisoned by the officer for such refusal, he may be discharged on
 
 habeas
 
 corpus.”
 

 In the case of
 
 Ex parte Schoepf,
 
 74 Ohio St., 1, 77 N. E., 276, the court held, in paragraph four of the syllabus:
 

 “While an officer before whom a deposition is being taken is empowered to punish as for contempt any person who refuses to obey an order to answer a question or to produce a document, he cannot do so unless it is so ‘lawfully ordei-ed;’ and where such question or document is not pertinent to the issues tendered or made, or is not material or necessary to make out the
 
 *95
 
 case of the party calling for it, or is incompetent or privileged, the witness cannot lawfully be ordered to answer such question or to produce such document.”
 

 Then follows the pronouncement in the former appeal in this case,
 
 In re Martin, Jr., supra.
 

 We think that a careful study of the
 
 Jennings
 
 and
 
 Schoepf cases
 
 will disclose that they were decided upon the question of
 
 privilege
 
 and not upon the question of relevancy, competency or materiality of testimony.
 

 There is no great difference of opinion upon the proposition that a witness who is not a party cannot lawfully refuse to answer any question, upon the taking of his deposition, that he could not lawfully refuse to answer if personally present at the trial.
 

 May a witness who is not a party, and is being examined in the trial of a cause inmpen court, be permitted to refuse to answer any question propounded, upon the claim that it is not relevant, competent or material, and to thereupon stop the trial while he tests that question in any or all the courts of this state? It would seem obvious that to countenance such procedure would give the witness the power to delay and frequently to defeat justice. It being true, as we shall see, that a witness upon the trial may not refuse to answer any question upon the ground of relevancy, competency or materiality, upon what logical basis then may a witness, in the taking of a deposition, be permitted to refuse to answer questions upon those grounds? It would seem both upon reason and authority that the witness has no such right.
 
 Nelson
 
 v.
 
 United States,
 
 201 U. S., 92, 50 L. Ed., 673, 26 S. Ct., 358.
 

 Mr. Justice McKenna, speaking for the court at page 115, of the
 
 Nelson case,
 
 said:
 

 “These writs of error are not prosecuted by the parties in the original suit, but by the witnesses, to review a judgment of contempt against them for disobeying orders to testify.
 
 Being tvitnesses merely,
 
 
 *96
 
 it is not open to them to make objections to the testimony. The tendency or effect of the testimony on the issues between the parties is no concern of theirs. The basis of their privilege is different from that and entirely personal, as we shall presently see.” (Italics ours.)
 

 In 26 Corpus Juris Secundum, 879, Section 65, it is said:
 

 “A witness cannot refuse to answer questions simply because he deems them incompetent or irrelevant, and the production of the evidence should be compelled if there is a possibility of its being competent, relevant, and material on the trial.”
 

 Rapalje on Contempt, 81, Section 66, uses this language :
 

 ■ “A witness cannot be permitted to refuse to answer a question on the ground that it is irrelevant. To hold that a witness could decide for himself upon the ■relevancy of a question, against the opinion of the judge presiding or the officer taking the deposition, would be subversive of all order in judicial proceedings.”
 

 8 Wigmore on Evidence, 148, Section 2210, reads:
 

 - “The witness has no privilege to refuse to disclose
 
 ,matters irrelevant
 
 to the issue in hand, first, because irrelevancy relates to the scope of the investigatiqn, and therefore is a concern of the parties alone, and ■may be obviated, as a ground for exclusion, by their consent or failure to object; and, secondly, because there is in the mere circumstance of irrelevancy nothing which' creates for the witness a detriment or inconvenience such as should suffice
 
 {ante,
 
 §2192) to override his general duty to disclose what the court ■requires. Moreover, the recognition of a privilege of this sort would add innumerable opportunities to make .a' claim of privilege, and would thus tend to complicate a trial and add to the uncertainty of the event.
 

 
 *97
 
 “Accordingly, it has always been accepted, at common law, that no privilege of this sort existed.”
 

 The Supreme Court of Missouri in
 
 Ex parte McKee, supra,
 
 considered this question. Paragraph two of the syllabus reads:
 

 “A notary public, being an officer authorized to take depositions, has authority under the 8th Section of the act concerning ‘witnesses,’ (R. C. 1845,) to commit a witness for refusing to answer any questions other than those which it is his personal privilege to refuse to answer.”
 

 Gamble, J., speaking for the court at page 601, said:
 

 “Again, the officer who takes the deposition, and who may know the nature of the action, when he requires a.witness, under the penalty of imprisonment, to answer a question propounded to him, does in effect decide that it is a proper question, and one sufficiently relevant to the issue to require an answer. The opinion of the witness, that the question is irrelevant, is entitled to no consideration. If that is his only objection to answering it, there can no injury result to him from compelling him to answer.”
 

 In
 
 Ex parte Munforcl,
 
 57 Mo., 603, the Supreme Court of Missouri again had this question, and used this language in paragraph four of the syllabus:
 

 “If a suit be pending, a notary public may enforce the attendance of witnesses to give (their depositions, and may compel them by imprisonment to answer any questions not violative of personal privilege.”
 

 In the case of
 
 Finn
 
 v.
 
 Winneshiek District Court, supra,
 
 it was held (paragraph four of the syllabus):
 

 “A witness can not refuse to answer questions for his deposition simply because he considers them irrelevant and incompetent, and upon an adverse ruling* by the court have the matter reviewed on certiorari.”
 

 The Supreme Court of Maine, in
 
 Bradley
 
 v.
 
 Veasie, supra,
 
 speaking through Cutting, J., at page 87, used this language:
 

 
 *98
 
 “If questions are improperly asked, they must be answered as the justice or presiding judge in his discretion shall dictate, subject, however, to be excluded, whenever such testimony shall be offered in any legal proceeding. By such a course, the law is magnified and rendered efficient and effectual, and the just and lawful rights of all parties fully protected.”
 

 : The Supreme Court of Georgia in the case of
 
 Williams
 
 v.
 
 Turner,
 
 7 Ga., 348, speaking through Nisbet, J., at page 350, said:
 

 “It will not do to permit a witness to judge what questions he shall answer, and what not; unless the questions are such, as by law, he is not bound to answer, he must answer all.”
 

 The Supreme Court of Kansas in
 
 In matter of Abeles,
 
 12 Kan., 451, a proceeding for a writ of
 
 habeas corpus,
 
 said (paragraph three of the syllabus):
 

 “The giving of testimony, whether on trial, or by deposition, is not a privilege of the witness, but a right of the party.”
 

 Again in
 
 In re Merkle,
 
 40 Kan., 27, 19 P., 401, a proceeding for a writ of
 
 habeas corpus,
 
 the court held, as stated in the syllabus:
 

 “A party to an action can compel a witness to give his deposition in the case prior to the trial, even though such witness resides in the county in which the action is brought; and where a witness duly subpoenaed to testify in a cause before a notary public, in giving his deposition refuses to answer certain questions propounded to him, for no other reason than that he is instructed by counsel not to do so, after having been instructed by the notary to answer them, he may be committed by the notary for contempt for such refusal.
 
 {In re Abeles,
 
 12 Kan., 451, cited, and followed.) ”
 

 In that case, as in the case at bar, counsel contended that the questions were irrelevant.
 

 
 *99
 
 In
 
 Harding
 
 v.
 
 American Glucose Co.,
 
 182 Ill., 551, 55 N. E., 577, 74 Am. St. Rep., 189, 64 L. R. A., 738, it was held (paragraph eighteen of the syllabus) :
 

 “A witness cannot base his refusal to answer a question which does not involve self-crimination or privileged communication, on the ground that it calls for immaterial testimony. ’ ’
 

 In the case of
 
 Nelson
 
 v.
 
 United States, supra,
 
 the Supreme Court of the United States held, as stated in paragraph four of the headnotes:
 

 “Witnesses cannot take objections to materiality of evidence in order to be rélieved from testifying. The tendency or effect of the testimony on the issues between the parties is no concern of theirs.”
 

 In
 
 Bevan
 
 v.
 
 Krieger, Sheriff,
 
 289 U. S., 459, 77 L. Ed., 1316, 53 S. Ct., 661, in a review of three judgments of this court, the United States Supreme Court held, as stated in paragraph two of the headnotes:
 

 “In Ohio, as generally elsewhere, testimony by deposition is taken subject to the right of the parties — not of the witness — to object to its admissibility at the trial. ’ ’ *
 

 At page 463 Mr. Justice -Roberts, speaking for the court, used this language:
 

 ■ “In Ohio, as generally elsewhere, the officer taking a deposition does not rule upon the competency or the materiality of the evidence to the issues made by the pleadings. The witness’s testimony is taken subject to the reserved right to object to its admissibility at the trial. The right of objection and exclusion belongs to the parties, not to the witness.”
 

 Some of these thirteen questions were undoubtedly •subject to objection; however this afforded no ground for the witness to refuse to answer.
 

 In the
 
 Finn case, supra,
 
 Deemer, J., at page 164, used this language:
 

 “Even though many of the questions propounded
 
 *100
 
 were subject to objection properly interposed, which objection would undoubtedly have been considered and made effective upon the trial of thé case, this was no reason in itself why the witness should not have answered them when before the commissioner. It would be intolerable to hold that a witness whose testimony is being taken by deposition may refuse to answer, have the propriety of the question determined by the court, and upon an adverse ruling bring the case to this court on
 
 certiorari,
 
 and delay, and prolong the trial of the case upon its merits indefinitely. It has been frequently held that a witness can not refuse to answer questions simply because he deems them incompetent or irrelevant.”
 

 See, also,
 
 In re Romine,
 
 138 F., 837;
 
 Blease
 
 v.
 
 Garlington,
 
 92 U. S., 1, 23 L. Ed., 521;
 
 Winder
 
 v.
 
 Diffenderffer, 2
 
 Bland (Md.), 166;
 
 Stewart
 
 v.
 
 Turner,
 
 3 Edw. Ch. (N. Y.), 458; 18 Corpus Juris, 685, Section 208;
 
 Thomson-TLouston Electric Co.
 
 v.
 
 Jeffrey Mfg. Co.
 
 (D. C.) 83 F., 614;
 
 Noell v. Bender,
 
 317 Mo., 392, 295 S. W., 532;
 
 Bennett
 
 v.
 
 Strodtman, Sheriff
 
 (Mo.), 42 S. W. (2d), 43;
 
 Ex parte Gfeller,
 
 178 Mo., 248, 77 S. W., 552;
 
 In re Hammond,
 
 83 Neb., 636, 120 N. W., 203, 23 L. R. A. (N. S.), 1173.
 

 We are clearly of opinion that the witness had no legal right to refuse to answer these thirteen questions after being ordered so to do, simply because he or his counsel deemed them to be irrelevant, incompetent or immaterial.
 

 We hold that the commissioner had the lawful right to order the witness to answer these questions, and when the witness refused to comply with such order he was guilty of
 
 an unlawful refusal to answer as a witness
 
 and was properly committed for contempt.
 

 It is claimed by counsel for the petitioner that the examination was not in good faith and was conducted only for the purpose of prying into the business affairs
 
 *101
 
 of the witness. There is nothing in this record to justify that claim.
 

 We are further of the opinion that the Court of Appeals was correct in holding- that the questions of relevancy, competency or materiality of the testimony could not be considered in a
 
 habeas corp%is
 
 proceeding, but should be determined by the Surrogate’s Court when offered upon the trial.
 

 The last group of nine questions which the witness refused to answer upon the claim of privilege presents the most difficult question- in this case. The determination depends upon the application of the doctrine of privileged communications between client and attorney. This doctrine was first recognized in England during the reign of Elizabeth. The first theory granted the privilege to the attorney upon the basis of
 
 the oath and the honor
 
 of the attorney, but did not extend the privilege to the client; that theory was finally repudiated by the courts of England and a second theory developed granting the privilege to the client in order to free him from apprehension in consulting his legal adviser; under this theory the attorney was refused permission to testify.
 

 It is now a recognized common-law rule that confidential communications between a client and an attorney are privileged and protected from inquiry when the client is a witness as well as when the attorney is a witness; a client cannot be compelled to disclose •communications which his attorney will not be permitted to disclose. ,
 

 In this jurisdiction this right is preserved by Section 11494, General Code, which provides in part as follows:
 

 “The following persons shall not testify in certain •respects:
 

 ‘ ‘ 1. An attorney, concerning a communication made to him by his client in that relation, or his advice to
 
 *102
 
 his client * * *. But the attorney * * * may testify by express consent of the client * * *; and if the client * * * voluntarily testifies, the attorney * * * may be compelled to testify on the same subject.”
 

 By this provision the mouth of the attorney is closed as to such communications unless the client consents or waives the privilege.
 

 It is well settled in this state that a witness has the lawful right to refuse to answer any question, the answer to -which would infringe any personal privilege granted by the Constitution or statutes of Ohio, or any recognized rule of the common law, and a witness committed for contempt for such refusal has the right to have that question of privilege determined in a subsequent
 
 habeas corpus
 
 proceeding.
 
 De Camp
 
 v.
 
 Archibald, supra; Ex parte Schoepf, supra.
 

 The rule with regard to privileged communications between client and attorney is well understood; difficulty is often encountered in its application.
 

 The Court of Appeals recognized and applied the rule and determined the claim of privilege as it applied to each of the nine questions. The conclusion was that three of the questions were privileged. We are not disposed to disturb that ruling.
 

 The six other questions held not privileged read as follows:
 

 Q. 261. “What work did he do for you?”
 

 Q. 686. “What was the nature of the services that Mr. Rappaport rendered for you?”
 

 Q. 687. “Where did Mr. Rappaport perform these services for you?”
 

 Q. 695. “Well, were they in the Southern Kraft matter ? ’ ’
 

 Q. 709. “Was he working in the Southern Kraft matter at the same time Mr. Boggs was working in it?”
 

 Q. 784. “Did Mr. Rappaport interview any witnesses for you?”
 

 
 *103
 
 The first five of these questions sought information with regard to the employment of Mr. Rappaport as attorney for the witness or the Martin Brothers Box Company. It is not seriously contended that the last question involves any question of privilege.
 

 It is the well-settled rule that the burden of showing that testimony sought to be excluded under this doctrine of privileged communications rests upon the party seeking to exclude it, and in this .case required that the record disclose, first,
 
 the existence of the relationship of client and attorney,
 
 and second,
 
 that the communications dealt with were connected with business for'which the attorney had been retained and not extraneous matters. Griffiths, an Infant,
 
 v.
 
 Metropolitan St. Ry. Co.,
 
 171 N. Y., 106, 63 A., 808;
 
 Rosseau, Admr.,
 
 v.
 
 Bleau,
 
 131 N. Y., 177, 30 N. E., 52.
 

 In
 
 Collins
 
 v.
 
 Hoffman,
 
 62 Wash., 278, 113 P., 625, the Supreme Court of Washington held (paragraph four of the syllabus) :
 

 “An attorney is not privileged from disclosing by whom he was employed nor the terms of the employment. ’ ’
 

 See, also,
 
 Satterlee, Admr.,
 
 v.
 
 Bliss,
 
 36 Cal., 489;
 
 Chirac
 
 v.
 
 Reinicker,
 
 11 U. S. (24 Wheat.), 280;
 
 Strickland
 
 v.
 
 Capital City Mills,
 
 74 S. C., 16, 54 S. E., 220;
 
 O’Brien
 
 v.
 
 Spaulding,
 
 102 Ga., 490, 31 S. E., 100, 66 Am. St. Rep., 202; Weeks on Attorneys at Law, 320, Section 151; 70 Corpus Juris, 420, Section 562.
 

 In 42 Ohio Jurisprudence, 276, Section 276, the rule is thus stated:
 

 ‘•‘To render the attorney incompetent to testify to communications of his client, the communications must have been made strictly in the relation of attorney and client. The testimony of a witness as to conversations with a party to an action cannot be excluded merely on the ground that the witness is an attorney at law and that the communications were confidential, unless
 
 *104
 
 it appears that he was the attorney for the party and that the communications were made in the course of such professional employment. In other words, before, the communication will be held to be privileged, it must have been made by the client to one who had been engaged to represent him as legal counsel, or to whom the revelation was made with the purpose of engaging him, so that the relation of attorney and client may be said to exist. * * *
 

 “Whether the relation of attorney and client in fact existed at the time the communications were made is to be determined by the court; the opinion of the parties themselves is not final.”
 

 In 28 Ruling Case Law, 559, Section 149, it is said: “It is sometimes said that all communications between counsel and client are privileged; but this is too general, and is inaccurate. They must relate to the business and interest of the client. The privilege extends only to communications connected with the business in which the attorney has been retained, and not to extraneous matters.”
 

 In Section 154, at page 564, it is said:
 

 “Ordinarily, an attorney may properly be examined as to the existence of the relation of attorney and client between himself and his client, and as to the terms of that relation. Thus, he may be required to state his authority for conducting a suit, or for compromising a claim, as the granting of such an authority necessarily imports permission to disclose its existence. He may also be compelled to disclose the character in which his client employed him, whether as executor, trustee, or on his private account; where the relationship began and ended, and whether he was instructed by one person to follow the direction of another. * * * It is also well settled that an attorney may be examined as to his fee, the contract therefor, and the amount thereof, these matters being deemed
 
 *105
 
 to be facts within his own knowledge, rather than confidential communications.”
 

 In this deposition, upon several occasions the witness was asked whether he had ever employed Mr. Rappaport as attorney in connection with the Southern Kraft matter and upon each occasion he refused to answer. (Questions Nos. 260, 261, 262, 263, 654, 655 and 656.) The record therefore does not disclose (due to the refusal of the witness to answer) the existence of the relation of client and attorney between the witness or the Martin Brothers Box Company and attorney Rappaport in connection with the Southern Kraft matter.
 

 Upon this state of the record we are of opinion that the witness should not now be heard to say that he can lawfully refuse to answer these six questions (Nos. 261, 686, 687, 695, 709 and 784) upon the ground that the answers thereto call for privileged communications.
 

 This brings us to a consideration of the last claim of the petitioner, which is that the order of commitment is indivisible and that if the witness had a lawful right to refuse to answer any one of the twenty-five questions set forth therein he must be discharged.
 

 This question was never presented in the original hearing in the Court of Appeals or in this court. The claim seems to be based upon the following language in
 
 In re Martin, Jr.,
 
 139 Ohio St., 609, at page 618:
 

 “* * nonetheless, as the order of commitment was predicated on the refusal to answer the twenty-five questions involved, and the order is indivisible, it follows that the judgment of the court below should be reversed and the cause remanded for further proceedings in accordance with this opinion.”
 

 With this statement we are not in accord. If the witness
 
 unlawfully
 
 refused to answer any question his
 
 *106
 
 commitment was lawful. The law does not require that a separate commitment be issued for each question which the witness refused to answer.
 

 It follows that the judgment of the Court of Appeals is correct and is therefore affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Zimmerman and Williams, JJ., concur.
 

 Matthias, J., concurs in paragraphs one, two, three, six and seven of the syllabus and in the judgment, but dissents from paragraphs four and five of the syllabus.
 

 Hart and Turner, JJ., concur in paragraphs one, two, three, six and seven of the syllabus, but dissent from paragraphs four and five of the syllabus and from the judgment.