BEVAN *v.* KRIEGER, SHERIFF.*

No. 784. Argued May 8, 9, 1933.—Decided May 22, 1933.

---

* Together with No. 785, *Koehrman v. Krieger, Sheriff,* and No. 786,
*Stranahan v. Krieger, Sheriff.*

460

*Messrs. Crary Davis* and *George D. Welles* for appellants.

*Mr. Raymond T. Jackson*, with whom *Messrs. Newton D. Baker, Harold W. Fraser*, and *John C. Morley* were on the brief, for appellee.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

The three judgments from which these separate appeals are prosecuted have a common origin, are founded upon the same Code provisions, in the main present related questions, and may be reviewed in a single opinion.

Suit was instituted in an Ohio court by Clara Sielcken-Schwarz, as widow and sole legatee of Hermann Sielcken, against the Woolson Company (of which the appellant Bevan is secretary and treasurer), Koehrman, Stranahan, and others, to obtain redress for an alleged fraudulent scheme whereby her deceased husband's executor, The Columbia Trust Company, was induced to part with certain capital stock of that corporation. The plaintiff, desiring to take the depositions of the three appellants, proceeded as provided by the General Code of Ohio.[1] Subpoenas *duces tecum* were served upon Bevan and Koehrman, and a subpoena *ad testificandum* on Stranahan. A notary public was named to take the testimony, and at the time and place appointed Bevan appeared before him, was sworn,

[1] Either party may commence taking testimony by deposition at any time after service of process (§ 11526), before a judge or clerk of a court, a justice of the peace, a notary public, and certain other designated persons (§ 11529). Notice of intention to take depositions must be given (§§ 11534-11535). The officer authorized to take the depositions may issue subpoenas; including subpoenas *duces tecum*, and provision is made for service upon the witness (§§ 11502-3-4). A party, or if the party be a corporation, any officer thereof, may be examined as if under cross examination (§ 11497).

answered some questions, declined to answer others, and finally declared that he would answer no more. In each instance he was enjoined by the notary to answer, and in each case stated that he refused on the advice of counsel. He also failed to produce papers and documents called for in his subpoena, although he admitted that he had them in his possession or under his control, and in this matter also gave as his excuse advice of counsel. He did not claim personal privilege or possibility of self-incrimination, but he and his counsel contented themselves with the statement that the questions and the writings were immaterial and irrelevant to any issue in the suit. Koehrman and Stranahan failed to appear in response to the subpoenas served upon them. The notary, upon the plaintiff's request, issued a commitment of Bevan for contempt, and attachments for the other two appellants. These writs were delivered to the sheriff for service. All three appellants surrendered to that official, and applied to the Court of Appeals of Lucas County for writs of habeas corpus. After hearings, that court remanded each to the custody of the sheriff. The Supreme Court affirmed the judgments.

In the courts below, and here, the appellants have insisted that the statutes of Ohio authorizing their arrest and detention deprive them of due process. The sections of the General Code drawn in question are 11510, whereby disobedience of a subpoena and refusal to be sworn, or an unlawful refusal to answer as a witness, may be punished as a contempt of the officer by whom the attendance or testimony of the witness is required; 11511, which authorizes the notary to issue an attachment to arrest and bring before him the person subpoenaed to give his testimony or answer for his contempt; and § 11512 which fixes the penalty for contempt:

"When the witness fails to attend in obedience to a subpoena, the court or officer may fine him not over fifty

dollars; in other cases, not more than fifty dollars nor less than five dollars; or he may imprison him in the county jail, there to remain until he submits to be sworn, testifies, or gives his deposition."

By § 11514 it is provided that a witness so imprisoned by an officer may apply to a judge of the supreme court, court of appeals, common pleas or probate court, who may discharge him if it appears that his imprisonment is illegal.

The appellants' position is that since the statute requires the witness to answer only lawful questions, and the notary, not being a judicial officer, is not permitted to pass upon the lawfulness of a question, but is bound to commit for refusal to answer, the commitment without a prior judicial hearing, and provision for such a hearing only after commitment (§ 11514), is a denial of due process.

Koehrman and Stranahan fail to present a federal question. Both of them, without excuse, absented themselves from the taking of the depositions. The writs of attachment issued to bring them before the notary for contempt were not served. While the sheriff held the process these appellants sought him out, surrendered to him, and immediately applied for writs of habeas corpus. Their conduct precludes the assertion that they were denied a hearing by the notary. They asked for none, and by their action rendered one impossible.

Bevan's case differs but slightly from those of Koehrman and Stranahan. He refused to answer questions or to produce the writings enumerated in his subpoena. The notary thereupon, after adjourning the hearing until the following day, issued the commitment. Bevan surrendered himself to the sheriff, and by habeas corpus challenged the legality of his detention.

In Ohio, as generally elsewhere, the officer taking a deposition does not rule upon the competency or materi-

ality of the evidence to the issues made by the pleadings. The witness's testimony is taken subject to the reserved right to object to its admissibility at the trial. The right of objection and exclusion belongs to the parties, not to the witness. So far as disclosed, the refusal to answer and produce documents was based solely on the theory that the petition in the suit did not state a cause of action and that the depositions constituted a fishing expedition for evidence. But the appellant now insists that aside from their irrelevancy, which was the ground of refusal to answer, the questions propounded may have been improper as trenching upon the personal privilege of the witness, although he indicates no aspect in which this might be true. He says that it would have been useless for him to raise the issue before the notary because under the decisions of the Ohio courts the latter is not a judicial officer invested with power to pass upon such an issue; that therefore a witness must take the risk that he is correct in his refusal to answer, and may vindicate his action only before a court after commitment, in accordance with § 11514.

In Ohio a notary has been held not to be a judicial officer within the meaning of the state constitution; but we think that he may nevertheless be authorized to pass upon the witness's privilege. We find no decision of the Supreme Court of Ohio holding the notary incompetent to consider and to pass in the first instance upon the propriety of a witness's refusal to answer. No such lack of power appears upon the face of the statutes. The appellant admits this, but asserts that the Code provision has been construed by the courts to prohibit the notary from passing on the witness's reasons for refusal to testify. We are not convinced that the state courts have so interpreted the statute.

But we deem it unnecessary to pursue the inquiry, or to express any view as to the adequacy of the hearing afforded after commitment by § 11514, for the reason that the alleged deprivation of appellant's liberty was consequent upon his sweeping statement that he would answer no further questions. Such conduct by a witness in any court would be sufficient ground for his commitment without further or other hearing. Such an attitude indicates no desire for a hearing upon the propriety of the questions, but on its face constitutes a contempt. Bevan requested no consideration of his rights by the notary, and was denied no hearing by that officer upon the issue whether the questions infringed his personal privileges as a witness. His claim that he was denied due process is therefore without foundation.

The appellant Bevan also advances the contention that the notary had such a pecuniary interest in compelling the testimony as would disqualify him, and deprive his rulings of the impartiality required for due process. Notaries are entitled to fees of twenty-five cents per hundred words for taking and certifying depositions (General Code, §§ 127, 1746–2). These are paid in the first instance by the party taking the depositions, and are taxable as costs in the suit. It appears from the record that it is also customary for the notary if, as in this case, he happens to be a stenographer, to take the testimony stenographically and to furnish additional copies to the parties at a charge somewhat less per hundred words than is provided in the statute. These facts are said to bring the case within the principle announced in *Tumey* v. *Ohio,* 273 U.S. 510. But we think the suggested analogy does not exist. Tumey, as mayor of a city, sat as a magistrate. His judgments were final as to certain offenses, unless wholly unsupported by evidence. The law awarded him a substan-

tial fee if he found an offender guilty, and none in case of acquittal. Tumey's interest was direct and obvious; but the possibility that the extent of the notary's services and the amount of his compensation may be affected by his ruling is too remote and incidental to vitiate his official action. Moreover, his action lacks the finality which attached to the judgment in the *Tumey* case, as it is subject to review in accordance with § 11514.

*No. 784, judgment affirmed.*
*Nos. 785 and 786, appeals dismissed.*