Hart, J.
 

 The question for the determination of this court may be stated as follows:
 

 In an action brought by a merchandising corporation against another corporation and certain of its officers, engaged in the same line of business in the same city, to recover the value of merchandise which plaintiff corporation claims was stolen from it by certain of its former employees who left its employ and thereafter organized the defendant corporation, became officers of, and engaged in selling for, the defendant corporation the same types of merchandise as sold by the plaintiff corporation, may a notary public as such, at the instance of the plaintiff corporation taking the deposition of one of such officers of the defendant corporation before trial of the action, require such witness to produce sales slips and route cards used in the business of the defendant corporation for a period of three months after it engaged in business, upon which slips and cards are recorded the names and addresses of the defendant’s purchasing customers, and may such notary, on refusal of the witness to produce such slips and cards without making claim or giving a reason for such refusal, commit such witness for contempt?
 

 Consumers claims that it has a right to take the deposition of the witness and to require him to produce the slips and cards in question on the theory that they will show that Peoples in the early months of its operation sold merchandise which its officers, while in the employ of Consumers, stole from the latter. On the other hand, Bott claims that this action was brought by Consumers solely for competitive purposes- and that the records in question are sought by Consumers,
 
 *515
 
 not in good faith, but for the purpose of an unfair business campaign to harass the individual defendants and their customers.
 

 In the process of obtaining pertinent and legitimate information for the determination of justiciable questions, courts encounter great difficulty in balancing the interests of public and private rights against the interest of private security. The matter is made more difficult where evidence on controversial questions is taken, not in open court where its competency and relevancy may be judicially determined, but before trial before a notary public whose power to determine competency and relevancy is extremely limited. One observation may -be appropriately made to the effect that in order that truth may prevail and wrong may not be shielded, courts should be slow to suppress evidence which perchance may turn out to be competent and relevant and to reveal the truth.
 

 By virtue of Sections 11550 to 11555, both inclusive, General Code, a party to an action is given broad authority to inspect books, papers and documents under the control of the adverse party, and to require the adverse party to produce them as evidence either in court or before an officer authorized to take testimony in the case; and Section 11503, General Code, provides that, by subpoena issued to a witness, a notary public may require the witness to testify and to bring with him any book or writing or other thing under his control, which he may be compelled to produce as evidence.
 

 In connection with the cross-examination of the witness Bott by counsel for Consumers, the record shows the following proceedings:
 

 <£Q. Mr. Bott, you were asked by subpoena
 
 duces tecum
 
 to bring with you the collectors’ route cards, do you have those with you? A. Yes.
 

 ££Q. And then also sales slips that you have in your business? A. Yes.
 

 
 *516
 
 “Q. Plave you those with you? A. Yes. * * *
 

 "Mr. McCarron: Well, we want the order slips from which' sales are recorded and the names of customers, that’s the first thing we want.
 

 “Q. You say you have those and we ask you to produce those, that is for the period up to January 1,1945, have you got those with you? A. Yes.
 

 “Q. Will you kindly produce them?
 

 “Mr. Garber: Objection.
 

 “Mr. Gilson: Is there an objection to the question or objection to producing them?
 

 “Mr. Garber: No, the objection is to producing them.
 

 “The witness: Upon advice of counsel I refuse to do it.
 

 “Q. Well have you the collectors’ route cards upon which is transcribed information from the sales slips from which permanent record is made of the names of the customers? A. Yes.
 

 “Q. Have you those cards for the period your company has transacted business up until the first of January, 1945? A. Yes.
 

 “Q. Will you produce those? * * *
 

 “The witness: On advice of counsel I do not produce them.
 

 “Q. Well, do you refuse to produce either the salesmen’s order slips or collectors’ route cards? A. On advice of counsel I refuse.
 

 “Q. Mr. Bott, all the slips and route cards that I am asking you to produce are the slips and route cards of the Peoples Home Equipment Company from the time that they started to operate up until the first of January, 1945, now these are the documents that I am asking you to produce now, do you understand? A. Yes.
 

 “And these you refuse to produce? A. Yes.”
 

 It will be noted that neither the witness, Bott, nor his counsel made any claim of privilege as a reason for the refusal to produce the salesmen’s sales slips or
 
 *517
 
 the customers’ route cards as ordered. The only reason given or explanation made for the refusal was that it was made “on advice of counsel.” No claim was made that the slips or route cards, if produced, were incompetent or irrelevant as evidence. The notary did not have an opportunity to inspect them as to their nature or relevancy. The witness and his counsel alone, without reason given, determined that matter. Under such circumstances the witness could not defend his position and the notary was well within his power and authority to commit the witness for contempt.
 
 Bevan
 
 v.
 
 Krieger, Sheriff,
 
 289 U. S., 459, 77 L. Ed., 1316, 53 S. Ct., 661, reviewing cases originating in Ohio.
 

 In the case of
 
 In re Merkle,
 
 40 Kan., 27, 19 P., 401, wherein a witness sought a writ of
 
 habeas corpus,
 
 the court held:
 

 “A party to an action can compel a witness to give his deposition in the case prior to the trial, even though such witness resides in the county in which the action is brought; and where a witness duly subpoenaed to testify in a cause before a notary public, in giving his deposition refuses to answer certain questions propounded to him, for no other reason than that he is instructed by counsel not to do so, after having been instructed by the notary to answer them, he may be committed by the notary for contempt for such refusal.”
 

 If the action had been against Bott alone as the defendant and he had refused to produce the papers demanded of him, on the ground that to do so might tend to incriminate him, a different question might arise. Under such circumstances, the witness has a right to claim privilege on that ground and if the nature of his inquiry or the nature of the documents or records demanded indicates that they might be incriminating, the notary cannot lawfully require the production. But the witness has no such immunity if the testimony or
 
 *518
 
 production of documents does not involve self incrimination or privileged communication and the objection is merely to the competency or relevancy of the evidence sought.
 
 Harding
 
 v.
 
 American Glucose Co.,
 
 182 Ill., 551, 55 N. E., 577, 74 Am. St. Rep., 189, 64 L. R. A., 738;
 
 In re Martin, Jr.,
 
 141 Ohio St., 87,102, 47 N. E. (2d), 388.
 

 There is another reason why Bott could not lawfully refuse to produce the documents demanded under subpoena. The documents whose inspection was deman'ded were the records and property of Peoples and were in the custody of its president, Bott, who, as a witness, had them present at the hearing pursuant to the order of the notary public for their production. Corporations are not entitled to all the constitutional immunities and protections in private security which private individuals have in such matters. Hence, an officer of a corporation cannot refuse to produce its records in his possession, upon the plea that they either will incriminate him or may incriminate it.
 

 On this subject, Justice Hughes, speaking for the Supreme Court of the United States in the leading case of
 
 Wilson
 
 v.
 
 United States, 221
 
 U. S., 361, 55 L. Ed., 771, 31 S. Ct., 538, Ann. Cas. 1912D, 558, involving the obligation of the president of the United Wireless Telegraph Company, a Maine corporation, under subpoena
 
 duces tecum
 
 to produce before a federal grand jury for inspection, in a case charging fraud in the use of the mails, letter-press copy books of the corporation in his possession, said:
 

 “We come then to the broader contention of the appellant, — thus stated in the argument of his counsel: ‘An officer of a corporation who actually holds, the physical possession, custody and control of books or papers of the corporation which he is required by a subpoena
 
 duces tecum
 
 to produce, is entitled to the same protection against exposing the contents thereof
 
 *519
 
 which would tend to incriminate him, as if the books and papers were absolutely his own. ’ That is, the power of the courts to require their production depends not upon their character as corporate books and the duty of the corporation to submit them to examination, but upon the particular custody in which they may be found. If they are in the actual custody of an officer whose criminal conduct they would disclose, then, as this argument would have it, his possession must be deemed inviolable, and, maintaining the absolute control which alone will insure protection from their being used against him in a criminal proceeding, he may defy the authority of the corporation whose officer or fiduciary he is, and assert against the visitatorial power of the state, and the authority of the government in enforcing its laws, an impassable barrier. # *
 

 “The fundamental ground of decision in this class of cases, is that where, by virtue of their character and the rules of law applicable to them, the books and papers are held subject to examination by the demanding authority, the custodian has no privilege to refuse production although their contents tend to criminate him. In assuming their custody he has accepted the incident obligation to permit inspection.
 

 “What then is the status of the books and papers of a corporation, which has not been created as a mere instrumentality of government, but has been formed pursuant to voluntary agreement and hence is called a private corporation? They are not public records in the sense that they relate to public transactions, or, in the absence of particular requirements, are open to general inspection or must be kept or filed in a special manner. They have reference to business transacted for the benefit of the group of individuals whose association has the advantage of corporate organization. But the corporate form of business activity, with its chartered privileges, raises a distinction when the au
 
 *520
 
 thority of government demands the examination of books. That demand, expressed in lawful process, confining its requirements within the limits which reason imposes in the circumstances of the case, the corporation has no privilege to refuse. It cannot resist production upon the ground of self-crimination. Although the object of the inquiry may be to detect the abuses it has committed, to discover its violations of law and to inflict punishment by forfeiture of franchises or otherwise, it must submit its books and papers to duly constituted authority when demand is suitably made. -This is involved in the reservation of the visitatorial power of the state, and in the authority of the national government where the corporate activities are in the domain subject to the powers of Congress. * * *
 

 “The appellant held the corporate books subject to the corporate duty. If the corporation were guilty of misconduct, he could not withhold its books to save it; and if he were implicated in the violations of law, he could not withhold the books to protect himself from the effect of their disclosures. The reserved power of visitation would seriously be embarrassed, if not wholly defeated in its effective exercise, if guilty officers could refuse inspection of the records and papers of the corporation. No personal privilege to which they are entitled requires such a conclusion. It would not be a recognition, but an unjustifiable extension, of the personal rights they enjoy. They may decline to utter upon the witness stand a single self-criminating word. They may demand that any accusation against them individually be established without the aid of their oral testimony or the compulsory production by them of their private papers. But the visitatorial power which exists with respect to the corporation of necessity reaches the corporate books without regard to the conduct of the custodian.”
 

 It is true that the
 
 Wilson case, supra,
 
 was decided by
 

 
 *521
 
 a divided court, one justice dissenting, but the doctrine of the case was approved in the recent case of
 
 Oklahoma Press Publishing Co.
 
 v.
 
 Walling, Admr.,
 
 - U. S.,-, 90 L. Ed. (Adv. Op.), 436, 447, one justice dissenting. It is true, also, that those cases involved governmental action against corporations for alleged illegal practices, but we see no difference in principle where the rule therein established is applied in cases involving alleged private wrongs on the part of a defendant-corporation, especially since the same corporate offense might involve both a public and a private wrong under the law. If such documents must be produced in a criminal prosecution they must likewise be produced as evidence in a civil action for damages growing out of the same unlawful act. It is not so clear that a corporate officer having in his custody books and papers of the corporation can be compelled to testify concerning them if such testimony would tend to criminate him, but he must at least produce the books and papers, and this is the only question before us in the instant ease. See 8 Wigmore on Evidence (3 Ed.), 342, 346, Sections 2259a and
 
 2259b; Nekoosa Edwards Paper Co.
 
 v.
 
 News Publishing Co.,
 
 174 Wis., 107, 182 N. W., 919;
 
 State
 
 v.
 
 Standard Oil Co.,
 
 218 Mo., 1, 116 S. W., 902;
 
 United States
 
 v.
 
 Austin-Bagley Co.,
 
 31 F. (2d), 229.
 

 The judgment of the Court of Appeals is reversed and the cause is remanded to that court for further proceedings according to law.
 

 Judgment reversed and cause remanded.
 

 Weygandt, C. J., Zimmerman, Williams, Turner and Matthias, JJ., concur.