**DEYE, Petition In Re Petitioner-Appellant.**

Ohio Appeals, First District, Hamilton County.

No. 7112.   Decided June 27, 1949.

Ferd Bader, Jr., Cincinnati, for petitioner-appellant.
Nathan Solinger, Cincinnati, for respondent-appellee.

## OPINION

By ROSS, PJ.:

On January 18th, 1949, Emanuel S. Marks filed a petition in the Common Pleas Court of Hamilton County, Ohio.

In this petition, he alleged that he purchased an eight story building from The Kruse & Bahlman Hardware Company on October 15, 1948; that at that time The Quality Engraving & Electrotype Company was a tenant in such building and that co-incident with the transfer of title to the building, Marks acquired the lease of The Quality Engraving and Electrotype Company by assignment from the former owner grantor, The Kruse Bahlman Hardware Company, that such former owner had permitted The Quality Engraving and Electrotype Company to install a certain "panel board and interior distribution arrangement" which is now located in that part of the premises under the sole control and in the possession of the new owner, Emanuel S. Marks, plaintiff in the principal action.

In the petition, this plaintiff further alleges that The Quality Engraving and Electrotype Company used this panel board and accessories so occupying the premises of the plaintiff for the purposes of distributing electricity to other co-tenants in the building, that it paid a gross rate to The Cincinnati Gas & Electric Company and charged its co-tenants a retail and higher rate for distribution of electric current to them.

The prayer is for an accounting of profits so made by The Quality Engraving and Electrotype Company, and for injunction against continued occupation of the property of the plaintiff Marks by the panel board and accessories.

It may be well doubted whether under such allegations the plaintiff ever will be entitled to any accounting. It would appear that his damages are limited to the reasonable rental value of the space unlawfully occupied, if it be shown that The Quality Engraving and Electrotype Company had no legal right to occupy the space used for the panel board and accessories.

Now the plaintiff proceeded to take the deposition of one Charles E. Deye, president of The Quality Engraving and Electrotype Company, and the president was served with a subpoena duces tecum, in which he was ordered to: "bring with you all books, records, memoranda and documents reflecting income of The Quality Engraving & Electrotype Company from the sales of electric current at the building at 424 Commercial Square, Cincinnati, for the period from November 1, 1948 to date, and reflecting also the payments made by The Quality Engraving & Electrotype Company to The Cincinnati Gas and Electric Company for electric current during the period November 1, 1948 to date, also records, memoranda or documents reflecting the volume of separate use of electri-

city by each of the tenants in the building at 424 Commercial Square, Cincinnati, including The Quality Engraving & Electrotype Company, for the period of November 1, 1948 to date; also all records, memoranda or documents reflecting billings for electricity made by The Quality Engraving & Electrotype Company to other tenants of the building at 424 Commercial Square, Cincinnati during the period November 1, 1948 to date."

In the bill of exceptions, the testimony of the president of The Quality Engraving & Electrotype Company (which Company was the defendant in the principal action) is quoted. It is to be noted that the president was called as a witness and his deposition "taken as on cross-examination."

What transpired before the notary is shown from the following quotation from the bill of exceptions:

"Q. Mr. Deye, you are the President of The Quality Engraving & Electrotype Company, the defendant in this case, are you not?

"A. Yes.

"Q. And you are actively engaged in the day to day conduct of the business?

"A. Yes.

"Q. You have access to the books and records and documents, etc.?

"A. Yes.

"Q. Those books, records, papers and memoranda, Mr. Deye, are subject to your control and supervision, are they not?

"A. In the main, yes, I control them, insofar as I know the records are there as far as I know.

"Q. Did you bring with you today for this deposition, in response to the subpoena that was issued and served on you, all of the books, records, memoranda and documents reflecting income of The Quality Engraving & Electrotype Company from the sale of electric current in the building at 424 Commercial Square, Cincinnati, for the period from November 1, 1948, to date, and reflecting all of the payments made by The Quality Engraving & Electrotype Company to The Cincinnati Gas & Electric Company for electric current during the period November 1, 1948, to date, and also records, memoranda or documents reflecting the volume of separate use of electricity by each of the tenants in the building at 424 Commercial Square, Cincinnati, including The Quality Engraving & Electrotype Company, for the period November 1, 1948, to date, and also all records, memoranda or documents reflecting billings for electricity made by The Quality En-

graving & Electrotype Company to other tenants of the building in 424 Commercial Square, Cincinnati, during the period November 1, 1948, to date. Did you bring those various records?

"A. For the reason that it was private, privileged business in which the plaintiff has no concern other than infringing, see, upon my rights, for that reason it is privileged business, it is my business in which he has no interest. I definitely refuse to answer.

"Q. I take it that you did not bring those?

"A. I did not bring the records, I brought none of the stuff you mentioned there, I have nothing with me outside of my person.

"Q. I will request of you that you immediately proceed to produce those books, records, memoranda and documents at this time, as requested in the subpoena.

"A. I will refuse to do so for the reasons mentioned heretofore.

"MR. SOLINGER: (To the notary) Miss Brown, I ask you as notary conducting this deposition to repeat to the witness the request that I have just made and in the event of his failure thereupon to comply, to proceed with proceedings in contempt for the refusal of the witness.

"A. You can dispense with reading it, my answer will be the same.

"MR. BADER: Let the record also show in addition to the reasons given by Mr. Deye for failing to bring the records as requested is that the records are privileged, they are the private property of The Quality Engraving & Electrotype Company and they are the secret records of the company, and that the production of the records is irrelevant and immaterial as far as the issues in this case are concerned and not pertinent thereto. Also, it would create an unusual and extraordinary burden on the witness to deliver those records to this office.

"Q. Mr. Deye, I understand that some of those books are of some bulkiness, is that correct?

"A. Well, it all depends what you want; sure, the books of any corporation are of size.

"Q. Now, would it be satisfactory with you and would you be willing to give us the opportunity if Mr. Marks or I or some other representative of Mr. Marks examined those books, records, memoranda and documents in your office?

"A. Absolutely no.

"Q. You would not make them available to Mr. Marks or his representative in your office?

"A. Not unless I am legally compelled to do so."

Without any further order of the notary an order of commitment was issued and a habeas corpus proceeding was instituted in which the Common Pleas Court sustained the commitment. From such judgment, this appeal on questions of law is taken.

In the case of **In Re Martin, Jr., 141 Oh St, 87,** it is stated in the fourth paragraph of the syllabus:

"A witness who is not a party has no legal right, upon the taking of his deposition, to refuse to answer any question, upon the advice of his attorney, merely because the attorney believes that the testimony sought is irrelevant, incompetent or immaterial."

Now, it is to be noted that the deposition of this witness was taken "as on cross-examination" and while the president of the corporation is not the defendant corporation, still the corporation speaks through its officers and if their evidence is taken on cross-examination they should have all the privileges of a party, including the right to question the relevancy of books and papers required to be produced, which are the property and within the privilege of the corporation. It is the corporation-defendant that is speaking through its President in questioning the relevancy of the books and papers demanded.

Whether further development of the original action may sustain the right to an accounting, it is perfectly manifest that, at the time the deposition was taken, no facts were alleged showing the existence of such right. The facts alleged in the petition show nothing that would entitle the plaintiff to pry into the relations existing between the defendant and the Cincinnati Gas & Electric Company, or its co-tenants.

No more typical case could be presented illustrating the injustice of requiring a corporation to produce through a subpoena duces tecum issued to an officer, a mass of books and papers wholly irrelevant to any issue that could be presented by the pleading in existence at the time the subpoena was issued.

While the right of the notary to pass upon matters of relevancy and materiality may be limited and his obligation to

commit mandatory, certainly, when it is made to appear to the court upon a habeas corpus proceeding that the books and papers involved have no relevant connection with the issues presented by the pleadings, it would be a travesty on justice if a court should be required to sustain a commitment based upon a refusal to produce that which it, as a court, would be bound to exclude as not being material and relevant evidence.

The last expression of the Supreme Court in any way relevant to the issues here presented is found in **In Re Keough, 151 Oh St, 307, at page 312** of the opinion:

"Petitioner maintains that there is a real and valid distinction between a subpoena ad testificandum and a subpoena duces tecum, but we need not pass upon the question involved in his thesis for reason that we hold, on authority of the Hyde case, that the information required in the subpoena involved here is pertinent in the Gebauer case.

"The identity of the operators of a transportation vehicle involved in an accident is relevant in an action concerning such accident by one who claims to have been hurt therein. The kind of person an operator is, with reference to his competency or lack thereof or training or lack thereof, bears directly upon the question of the due care of the transportation company with reference to the operators to whom it entrusts its vehicles.

' "We are not holdng that an accident record of such an operator would shed any light upon his competency or incompetency, because that would require a collateral investigation as to the cause of other accidents not concerned with the one on trial.

"Assuredly it would be pertinent to a plaintiff's case, in the trial of a negligence action as the result of an accident in which a public transportation vehicle was concerned, to have information as to what vehicle was involved, as to its schedules on the day of the accident and as to its route. All these matters have a direct bearing upon the question of the operating speed.

"Since petitioner's whole argument with reference to §11551 GC, is bottomed upon a question of relevancy, Gebauer was entitled under that section to the information he seeks in the subpoena with which the present case is concerned."

See, also: Opinion, page 310. .

The witness, having been called as on cross-examination, being the president of the defendant corporation, had the

right to question the relevancy and materiality of the books and papers of the defendant corporation which he was ordered to produce.

Although the witness in denying the right of the notary to require production did not use the terms "relevancy and materiality" he, in effect, questioned such right upon these grounds

Other than the original subpoena, there is also no order of the notary to produce the records in question.

For the reasons given, the judgment of the Common Pleas Court is reversed and the petitioner, Charles E. Deye, is released from custody, as prayed in the petition.

ROSS, PJ, HILDEBRANT & MATTHEWS, JJ, concur in syllabus, opinion & judgment.