The Perfect Measuring Tape Co., Appellee, *v.*
Notheis, Jr., et al., Appellants.
In re Notheis, Jr.
In re Bell.

(Nos. 4665, 4669 and 4670—Decided January 12, 1953.)

*Mr. George R. Effler* and *Messrs. Streicher, Gorman & Barone,* for appellee, The Perfect Measuring Tape Company.
*Mr. Theodore Markwood,* for appellants, Herman A. Notheis, Jr., and Lawson R. Bell.

Conn, J. The first cause given consideration, No. 4665, is an appeal on questions of law and fact from an order of the Common Pleas Court overruling a motion of defendants for a temporary injunction. Having determined that the order so entered was "an or-

der affecting a substantial right made in a special proceeding," pursuant to Section 12223-2, General Code, the cause has been submitted on the original papers, a transcript of the docket and journal entries, and a transcript of the evidence taken by deposition.

It is alleged in the petition that plaintiff is engaged in manufacturing and marketing paper measuring tapes, which are used in the textile industry; that plaintiff uses unique machines in the manufacture of such tapes; that prior to the activities of the defendants herein, plaintiff was the sole manufacturer of the type of tapes described in its petition and the sole suppliers of such tapes in the United States, Canada and elsewhere within the marketing areas of such product; that for about 15 years prior to August 10, 1951, the defendant Herman A. Notheis, Jr., had been a trusted employee of plaintiff and its predecessor in title; that during such period of employment, said employee had access to plaintiff's records, including its suppliers, its customers, its price lists and shipments; and that during such employment such defendant operated the machines of plaintiff which "are secret precision devices of complicated mechanical construction" for the manufacture of tapes, including dispensing devices essential to the use of measuring tapes by its customers.

It is alleged further that during the year 1950, while defendant Notheis, Jr., was employed by plaintiff, he conceived the idea of constructing a machine similar to plaintiff's and, later, about June 1951, he and defendant Lawson R. Bell entered into a copartnership for the purpose of manufacturing and selling paper measuring tapes and for that purpose used the machine which defendant Notheis, Jr., had "secretly and surreptitiously" built in "functional imitation of plaintiff's secret machines"; that said defendant had access to the trade secrets of plaintiff's business, its customers and price lists and subsequently entered

into competition with plaintiff and made use of the above-mentioned and other secret trade information acquired during his employment by plaintiff; that on August 10, 1951, said defendant terminated his employment; that since such date he has devoted his entire time to the business of such partnership, using secret trade information which he had obtained from plaintiff; and that defendants have appropriated unto themselves property rights of plaintiff of great value. Plaintiff prayed for a restraining order, an accounting, and damages.

The motion of defendants, above referred to, was filed following notices to take depositions of defendants and also the issuance of *subpoenas duces tecum.* The motion seeks to restrain plaintiff from proceeding with the depositions, so far as such depositions may pertain to questions in the field of the trade secrets of defendants, including suppliers of merchandise, customer and price lists, and correspondence and financial information concerning defendants' business, on the ground that these matters are privileged, confidential and constitute trade secrets.

Defendants also seek to restrain plaintiff from requiring defendants to produce books and records of defendants' business, including records of the procurement of materials, the manufacturing of measuring tapes, the names of customers, price lists, dates of shipment and correspondence, etc., for the reason that same are privileged, confidential and embrace trade secrets.

While a motion is not dignified as a pleading under the Code (Section 11303, General Code), yet it is commonly adopted by a litigant who seeks a provisional order, as in the instant case, under which it is sought to protect the asserted property rights of defendants during the pendency of an action.

Defendants' motion contains numerous allegations

of fact, but, notwithstanding its factual content, it is not verified or supported by an affidavit. Neither do we find any evidence offered in support of the motion or tending to support any one of the several allegations of fact. On the record before us, it is our opinion that the overruling of defendants' motion by the Common Pleas Court was not erroneous.

We next proceed with the appeals in the habeas corpus cases, numbered 4669 and 4670. The original appeals on questions of law and fact were dismissed by the court on its own motion and each cause retained as an appeal on questions of law. As the issues are substantially identical, these appeals will be considered together. The respondent-appellee and appellants herein will be designated plaintiff and defendants respectively, as in the original action.

Following the filing of the petition outlined above and the service of summons, the plaintiff served on defendants notices and subpoenas to take depositions as upon cross-examination under the statute, and, also, *subpoenas duces tecum*, directing defendants to bring with them certain specified books and records of the International Tape Company, under which name defendants were doing business.

Pursuant to such notice and subpoena, the deposition of defendant Notheis, Jr., was taken on June 4, 1952, and thereafter continued from time to time. The witness was examined at length relative to the business of defendants, as copartners doing business under the name International Tape Company, including specific inquiries as to the time defendant conceived the idea of a measuring tape machine and the building thereof; the time defendant began construction of such machine; his sources of information; the dates when tapes were first produced on said machine and first sales made; his source of materials and profits; and

the production of books and records of defendants' business. Approximately 60 questions of the general character indicated were asked and, on advice of counsel, answers were refused on the ground of privilege.

The deposition of defendant Lawson R. Bell was also taken. Many inquiries made of this witness were similar to those made of defendant Notheis, Jr., including some additional questions respecting sales made in competition with plaintiff. Answers were refused on advice of counsel, based on the ground already stated.

At the time the depositions were taken, the only pleading which had been filed was plaintiff's petition and, therefore, the issues were not as yet made up on the pleadings.

We observe that plaintiff does not claim its method of producing measuring tapes and the mechanical devices used for that purpose were protected by patent, or that defendant Notheis, Jr., had violated his contract of employment when he engaged in business in competition with plaintiff.

As already pointed out, it is the claim of plaintiff that such defendant had been its trusted employee and engaged in operating plaintiff's machines, which were secret precision devices; that as such employee, he became acquainted with the business of plaintiff and the methods of manufacturing and marketing the measuring tapes of plaintiff; that defendants secretly set up machinery and opened a place of business; and that, thereafter, defendants manufactured and placed on the market measuring tapes in competition with plaintiff.

The record discloses that the advice of counsel given the defendants at the time they respectively refused to answer the several questions was predicated on the claim that plaintiff, prior to the time the depositions

were taken, had not offered any evidence that it had any trade secrets during the employment of defendant Notheis, Jr., and, further, that the inquiries made of defendants and the books and records of the International Tape Company directed to be produced were privileged and constituted confidential trade secrets. It was further stated by counsel that the inquiries related directly to such matters as dates of invention and conception, "which are particularly important information in the patent field and concern the patent interests of this defendant."

Following the refusal of defendants to answer certain questions and to produce books and records on order of the notary to do so, and the further refusal to answer, each of the defendants was adjudged guilty of contempt and ordered imprisoned in the county jail until they respectively consented to testify.

Thereupon separate citations for writs of habeas corpus were filed and writs obtained by both defendants. Upon hearing, the trial court determined that each defendant was lawfully detained and remanded the defendants to the custody of the sheriff, there to remain until they severally consented to answer the questions propounded to them and obey the *subpoenas duces tecum*.

In separate appeals to this court, defendants assign as error, briefly restated, that the trial court erred in adjudging that the petitioners were lawfully restrained of their liberty and in failing to order their discharge from custody. Further, that the court erred in not ordering the proceedings placed "in camera" for the protection of the property rights of all parties.

No claim is made that defendant Notheis, Jr., in consideration of his employment had agreed not to divulge any trade secrets of plaintiff or that any measures had been adopted by plaintiff by contract or

patent to protect trade secrets it may have had relative to the character and operation of its mechanical devices or methods of manufacturing and marketing its product.

As already noted, no evidence had been adduced in support of plaintiff's claim, prior to the time the depositions of defendants were taken, that the machines used and the methods of manufacture employed by it constituted trade secrets, or that there was an obligation, implied or contractual, owing plaintiff by defendants or either of them to refrain from engaging in a competing business.

It may be suggested further that when it is made to appear that particular trade practices and trade secrets of the employer, as distinguished from general secrets of trade, have been entrusted to an employee in confidence, in the course of his employment, the law implies an obligation on such employee not to disclose such trade secrets or use them to his own advantage in any manner which would amount to a breach of confidence or of good faith. On the other hand, in the absence of such implied obligation or any restrictive covenant, an employee who has quit the service of his employer may use in his own business or in the business of another, his experience, skill, acumen, memory and general knowledge. The following authorities throw light on the questions presented by the record before us: *Curry* v. *Marquart*, 133 Ohio St., 77, 11 N. E. (2d), 868; *Imboden* v. *L. W. Hawker, Inc.* (Ohio App.), 41 N. E. (2d), 271; *National Tube Co.* v. *Eastern Tube Co.*, 13 C. D., 468, 3 C. C. (N. S.), 459; *In re Deye*, 85 Ohio App., 302, 88 N. E. (2d), 60; *Crocker-Wheeler Co.* v. *Bullock*, 14 Ohio Fed. Dec., 561, 134 F., 241; *Griffin Mfg. Co., Inc.,* v. *Gold Dust Corp.*, 245 App. Div., 385, 282 N. Y. Supp., 931; *Junker* v. *Plummer*, 320 Mass., 76, 67 N. E. (2d), 667, 165 A.

L. R., 1449; annotation 126 A. L. R., 758; 35 American Jurisprudence, 527, Section 99; 56 Corpus Juris Secundum, 483, Section 72.

While there appears to be some conflict among the decisions of the reviewing courts, the prevailing rule, to which attention has been directed, is concisely stated in the syllabus of *Curry* v. *Marquart, supra,* as follows:

"In the absence of an express contract not to engage in a competitive pursuit, an employee, upon taking a new employment in a competing business, may solicit for his employer the trade or business of his former customers and will not be enjoined from so doing at the instance of his former employer where there is no disclosure or use of trade secrets or confidential information relative to the trade or business in which he had been engaged and which he had secured in the course of his former employment."

Counsel for plaintiff cite the case of *Ex parte Bevan,* 126 Ohio St., 126, 184 N. E., 393, affirmed in *Bevan* v. *Krieger, Sheriff,* 289 U. S., 459, 77 L. Ed., 1316, 53 S. Ct., 661, wherein a charge of fraudulent conspiracy was made against the officers of a corporation by plaintiff. Notice to take depositions and *subpoenas duces tecum* were served on the officers, but they refused to answer or to produce books and records, on the advice of counsel. It was pointed out in the opinion of the court that no question of privilege had been raised. The case of *In re Bott,* 146 Ohio St., 511, 66 N. E. (2d), 918, is also relied on by plaintiff. In that case the witness refused to produce papers and documents "for no reason than that his refusal is on advice of counsel." No claim of privilege had been asserted. These cases are unlike the cases before us.

To further distinguish the instant case from those cases where no claim of privilege is made, we call attention to *In re Martin, Jr.,* 141 Ohio St., 87, 47 N. E.

(2d), 388. In that case the witness was advised by counsel not to answer on the ground that the testimony sought ''was not relevant, competent or material.'' Judge Bell, in the opinion of the court, pointed out that the witness ''by such action constituted himself *the judge* as to what testimony was relevant, competent and material.'' The court also distinguished the earlier cases of *DeCamp* v. *Archibald,* 50 Ohio St., 618; *Ex parte Jennings,* 60 Ohio St., 319; and *Ex parte Schoepf,* 74 Ohio St., 1. It appears that in each of these cases a question of privilege was raised and asserted. See, also, *In re Hyde,* 149 Ohio St., 407, 79 N. E. (2d), 224, and 2 Restatement of the Law of Agency, 896, Section 396.

In the instant case, equitable considerations require that the trade practices and secrets of defendants' business, and also the mechanical devices and processes employed therein, be given a cloak of protective security as potent and efficacious as that to which plaintiff may be entitled. A court of equity imposes on those who seek equity the obligation to do equity.

In the light of these considerations, the assertion of the right, privilege or immunity which plaintiff alleges has been transgressed by defendants is not unlike in substance or superior in quality to that privilege or right which was asserted by defendants at the time their depositions were taken and immunity claimed, including the right to be protected in relation to any ''new and useful'' mechanical device or process which has been discovered by them.

It should be observed also that at the time the depositions were taken the issues were not made up on the pleadings and plaintiff had not made any showing in support of the allegations in its petition, including the allegations that plaintiff's business embraced certain trade secrets and that they were surreptitiously taken by defendants. It appears to follow that plaintiff

must at least make a prima facie showing in support of its petition that it has business or trade secrets which were wrongfully appropriated by defendants before it can claim the right to pry out or curiously inspect the alleged trade secrets of defendants.

In view of the conclusions we have reached, it becomes unnecessary for the court to consider and determine the claim that the trial court erred in not making an order protecting the property rights of the parties by impounding the testimony, that is, placing the evidence "in camera."

In cause No. 4665, this court enters judgment similar to that of the trial court, overruling the motion of defendants for a temporary restraining order.

The judgments entered by that court denying the writs of habeas corpus in cases Nos. 4669 and 4670, are reversed and said defendants are discharged from custody.

*Judgments accordingly.*

FESS and SAVORD, JJ., concur.