Bell, J.
Although the appellant assigns 25 specifications of error, all of them are included in the following four questions presented by this appeal:
1. Did the commission have jurisdiction to revoke or suspend appellant’s permit for the reasons specified in its citation order?
2. Was the penalty inflicted by the commission excessive or unreasonable ?
3. Was the commission estopped from revoking or suspending the permit of appellant because of the provisions of Section 4903.08, Revised Code?
4. Did the commission err in not disqualifying the chairman from participating in this proceeding?
Section 614-105, General Code (Section 4923.03, Revised Code), reads in part as follows:
“The Public Utilities Commission of Ohio is hereby vested with power and authority to supervise and regulate each such private motor carrier in this state; to prescribe reasonable safety rules; to prescribe reasonable rules and regulations for the administration and enforcement of the provisions of this chapter applying to each such contract carrier by motor vehicle in this state * *
Appellant contends that the jurisdiction of the Public Utilities Commission is limited by this section to only such matters as are covered by “this chapter” (the Motor Transportation Act), and that, since Sections 7246 and 7248-1, General Code (Sections 5577.01 and 5577.04, Revised Code), referred to in the citation, are not a part of “this chapter,” the commission is without jurisdiction to act.
This question is not a new one in Ohio.
Section 614-87, General Code (Section 4921.10, Revised Code), reads in part as follows:
*104 “The commission may at any time for good cause and upon at least 15 days’ notice to the grantee of any certificate and [after granting] an opportunity to be heard, revoke, alter or amend any certificate issued under the provisions of this chapter. ’ ’
The third and fourth paragraphs of the syllabus in Dworkin v. Public Utilities Commission, 159 Ohio St., 174, 111 N. E. (2d), 389, are:
“3. Such action by the commission for ‘good cause’ may be based on a violation of a statute or a valid rule or order of the commission.
“4. Such action may be based on a criminal statutory violation although there may have been no prosecution thereunder. ’ ’
Appellant contends that revocation of its permit was an excessive and unreasonable disciplinary action by. the commission because of (1) the absence of arrest for overloading in its operations under the permit and (2) certain “mitigating circumstances” listed by the attorney examiner in his report and recommendation.
It is, of course, the duty of the commission and not of the examiner to fix the degree and character of the administrative action to be invoked against a carrier. In its discussion of the evidence in this cause, the commission stated as follows :
“There are no facts or circumstances in this case which can properly be regarded as being in the nature of mitigating elements. The citee, in the judgment of the commission, has been willful and wanton in its violation. In the month of December 1952 there was an average of seven (7) violations per day. The average gross overload was in excess of 3,000 lbs. Under these facts and circumstances, it is impossible for the commission to conclude that such operations were the result of mere carelessness or negligence. Such consistent regularity in violating the law over such a period of time, with full knowledge on the part of a number of citee’s duly authorized agents and employees, indicates very clearly that such illegal activities were part of the day-to-day pattern of operations conducted by this company and either approved or condoned by the officers and directors.
*105 “* * * Certainly, jnst because the citee was not apprehended, prosecuted or convicted for his illegal acts does not condone them nor does it serve as a mitigating circumstance that it was so fortunate as not to be caught in its illegal activities.
“The commission, while acknowledging that the accident record of citee appears to be good, at least by standards commonly accepted by insurance companies, does not believe that a company which so rechlessly and regularly disregards the laws of Ohio on weight limits is carrying on a sound business operation or is a company of which it can be said that its overall operating record is good.” (Emphasis added.)
Examination of the record upon which the commission based its order of revocation discloses that appellant hauled approximately 900 shipments of steel in excess of the maximum gross weight prescribed by law; that 210 of these overloads were hauled during December 1952 alone, for an average of 7 overloads per day or 52.5 overloads per week; that a large proportion of these overloads exceeded 84,000 pounds and two of them were in excess of 90,000 pounds; that all but eight of citee’s 35 drivers, interviewed by the highway patrol, acknowledged that they had knowingly hauled overloads during the period covered by the commission’s citation; that both citee and citee’s drivers had knowledge of these overloads; and that citee billed the consignees on the basis of these excessive weights.
In the light of these facts, this court can not say that the action of revocation by the commission was excessive or unreasonable.
Appellant contends that the commission was estopped from revoking or suspending the permit of appellant because of the provisions of Section 614-39, General Code (Section 4903.08, Revised Code), which reads as follows:
“No person shall be excused from testifying or from producing accounts, books and papers, in any hearing before the commission, or any member thereof, or any person appointed by it to investigate any matter or thing under its jurisdiction, on the ground or for the reason that the testimony or evidence might tend to incriminate him, or subject him to a penalty or forfeiture, but no such person shall be prosecuted or subjected *106 to any penalty or forfeiture for, or on account of, any transaction, matter or thing concerning which he may have testified or produced any documentary evidence; provided that no person so testifying shall be exempted from prosecution or punishment for perjury in so testifying.”
Appellant contends that inasmuch as the commission subpoenaed it, through its president, to appear, testify and bring various books, records, bills, orders, invoices, accounts and other papers relating to shipments, weights, etc., and that, since the president did testify in regard to those matters, the commission is estopped from taking any disciplinary action against appellant based on that testimony.
We believe, however, that this contention of the appellant is untenable for two reasons.
In the first place, Section 4903.08, Revised Code, provides that no person shall be subjected to any “penalty or forfeiture.” A forfeiture has been defined as a divestiture of property without compensation in consequence of some default or act forbidden by law. 19 Ohio Jurisprudence, 204, Forfeiture and Penalties, Section 2. A penalty has been defined as a sum of money exacted by way of punishment for the doing of some act which is prohibited, or from omitting to do something which is required to be done. 19 Ohio Jurisprudence, 212, Forfeitures and Penalties, Section 15.
A certificate or permit issued to a motor transportation company is a revocable license which confers no property rights upon the holder. Scheible, Mayor, v. Hogan, 113 Ohio St., 83, 148 N. E., 581; Alspaugh v. Public Utilities Commission, 146 Ohio St., 267, 65 N. E. (2d), 263. Since the revocation of a permit or a certificate can not therefore divest the holder of any property right, and since the payment of a sum of money is not involved, the revocation of a permit may easily be distinguished from both a penalty and a forfeiture.
In the second place, the statute provides that the person who testifies shall not be prosecuted or subjected to any penalty or forfeiture. In this case the person who testified was appellant’s president and he is a person separate and distinct from the appellant.
Judge Hart, in the case of In re Bott, 146 Ohio St., 511, 66 N. E. (2d), 918, said:
*107 “* * * corporations are not entitled to all the constitutional immunities and protections in private security which private individuals have in such matters. Hence, an officer of a corporation can not refuse to produce its records in his possession, upon the plea that they either tuiU incriminate him or may incriminate it.” (Emphasis added.)
The remaining question in this appeal is whether the commission erred in refusing to disqualify the chairman from participating in this matter.
The Public Utilities Commission is a creature of statute and is the only body in this state that can act in cases of this character. In matters involving public utilities it has exclusive jurisdiction. It is conceded that the General Assembly has not directed that any member of the commission shall disqualify himself under any circumstances and no provision is made in the statutes for the determination of the fact of disqualification. Nor is there a provision for a substitute to replace a commissioner if he should be disqualified because of bias or prejudice.
The General Assembly has acted with respect to the disqualification of judges for bias or prejudice. Section 2501.13, Revised Code, provides for the disqualification of a judge of a Court of Appeals; Section 2701.03, Revised Code, provides for the disqualification of a judge of a Court of Common Pleas; and Section 2937.20, Revised Code, provides for the disqualification of a magistrate or a judge of a court inferior to the Court of Common Pleas.
Not only has the General Assembly made specific provision for the disqualification of certain judges and magistrates but it has provided for the substitution of another judge or magistrate to hear a case when one is disqualified. In the light of this legislative action, it would seem that an argument that the commission has the implied power to determine whether one of its members is disqualified on the ground of prejudice or bias must fail. If two members of the commission are to decide the disqualification of the third member, who will decide the disqualification of two members in the event affidavits of prejudice are filed against them? The argument can be made ad absurdum. As stated, in substance, in the brief of the commission, it may well be that there should be a provision for the disquali *108 fication of a member of the Public Utilities Commission on the ground of prejudice and bias. However, that is a question for the General Assembly.
A review of the matters relied upon by appellant as showing personal prejudice on the part of the chairman has not convinced this court that such prejudice existed. It indicates only a belief that action should be taken against motor transportation companies if and token they violate the laws of this state. This court can certainly not condemn an attitude such as that on the part of a chairman of a commission charged with the duty of supervision of motor transportation companies.
But assuming, for the sake of argument, that such prejudice existed we cannot say that it was prejudicial to the appellant. All three members of the Public Utilities Commission agreed on the facts in this case; the dissenting member differed only on the punishment. Even if the member alleged to have been prejudiced should not have participated, this court is of the opinion that the evidence before the commission amply supports the order it made.
For the reasons above stated, the orders of the Public Utilities Commission are affirmed.

Orders affirmed.

Weygandt, C. J., Matthias,- Hart, Zimmerman, Stewart and Taft, JJ., concur.