NORD v. McMILLAN ET AL.

[Cite as Nord v. McMillan, 6 Ohio Misc. 25.]

(No. 34311—Decided January 19, 1966.)

Common Pleas Court, Clermont County.

*Mr. Chris Rosenhoffer,* for the plaintiff, Martha E. Nord.
*Mr. Paul J. Weber,* for defendant, Vera McMillan.
*Mr. Louis H. Ginocchio,* for the other party defendant.

NICHOLS, J. This matter comes on for decision by the court upon a referral to the court by an officially appointed court reporter, who was taking the deposition, as a notary public, of one of the defendants, Vera McMillan, for instructions in regard to the right of the defendant to refuse to answer certain questions on advice of counsel. The suit involved is a claim of the plaintiff for libel for an article written by the defendant Vera McMillan and claiming that she caused the article to be published in a newspaper named the "Ohio Piker," and likewise against the defendant Arnold N. Nichols who is the publisher of the paper. The alleged libelous article was made during a campaign for trustee of Pierce Township, Clermont County, Ohio, in which the plaintiff, Martha E. Nord, was one of the candidates. The article was signed, according to the petition, "Issued by Committee of Interested Pierce Township Citizens, Vera McMillan, Chairman—3837 Bennett Rd.—Cincinnati, Ohio 45245." The defendant Vera McMillan was being examined, as on cross-examination, before Dora DeTellem, a notary public in and for the state of Ohio; being one of the official court reporters of the Court of Common Pleas of Clermont County, Ohio.

The matter was presented to the court after the refusal of the witness to answer a question on advice of counsel and the reporter asked for a recess in order to obtain instructions from the court. At the time of the hearing, the plaintiff was represented by Chris Rosenhoffer of Batavia, Ohio, and the defend-

ant Vera McMillan was represented by Paul J. Weber, an attorney of Cincinnati, Ohio, and the defendant Arnold H. Nichols was represented by his attorney, Louis H. Ginocchio, also of Cincinnati, Ohio.

These attorneys met with the court and it was agreed that the deposition should be continued and that the notary would not be required to pass on the question of jail sentence at that time but that she would abide by the decision of the court. The deposition continued and the court has the transcript of this deposition showing the various and sundry questions to which answer was refused by the defendant on advice by counsel. There are a total of 36 questions in this category.

Several sections of the Revised Code are involved in this matter. First, a right of the parties to call a party defendant to be examined as on cross-examination by the opposing party. This right has long been a part of the law of the state of Ohio. It is presently covered by Section 2317.07 of the Revised Code which, in part, reads as follows:

"At the instance of the adverse party, a party may be examined as if under cross-examination, orally, by way of deposition, like any other witness, by way of written interrogatories filed in the action or proceeding pertinent to previous pleadings of such party, or by any one or more of such methods."

This section provides that all interrogatories must be answered unless they are demurred to.

Section 2317.20, Revised Code, is the section which provides for contempt punishment for an unlawful refusal to answer as a witness. This entire section reads as follows:

"Disobedience of a subpoena, a refusal to be sworn, except upon failure to pay fees duly demanded, and an unlawful refusal to answer as a witness or to subscribe a deposition, may be punished as a contempt of the court or officer by whom the attendance or testimony of the witness is required."

The punishment that might be meted out by the notary taking the deposition is set out in Section 2317.22, Revised Code, which provides in part, that the court or officer may fine a person in violation of the provisions of Section 2317.20, a fine of not more than $50 nor less than $5.00, or may commit the witness to the county jail to remain until he testifies.

It was at the request of the attorney for the plaintiff to

commit the witness to jail, that the notary sought the advice of the court.

The first question for the court to decide, of course, is what authority it has under this set of circumstances. While there was seemingly an agreement of the parties to this procedure, nevertheless, the court must have legal authority so to act.

The only reported case that the court finds on this subject is the case of *Mary E. Thomas* v. *Frank N. Beebe*, decided by the Court of Common Pleas of Franklin County in 1897 and reported in 5 N. P. 32, 8 O. D. (N. P.) 231. That case holds that while there did not seem to be any statutory provision for the certification of the question similar to that in this case to the court for instructions, there was precedent therefor. The court referred to an unreported case by the title of *Shaw* v. *Ohio Edison Installation Co.*, decided by Judge Wm. H. Taft, when he was a judge of the Superior Court of Cincinnati, Ohio, wherein it was stated that a notary public, in taking a deposition, was an officer of the court and that it was in accordance with the practice in chancery to permit a notary to consult with the court concerning the relevancy and the competency of questions put to a witness whose deposition was being taken.

This seems to the court to be logical and proper and while supplementary to the right of the notary to either impose a fine or commit a witness to jail, thereby causing him to proceed with a suit in habeas corpus to test the validity of the ruling, this present procedure seems to be much more logical and certainly more practical.

The court therefore holds that it is within the power of a notary public taking depositions, when questions arise relating to the relevancy and competency of questions being put to a witness, which questions a witness refuses to answer on the advice of counsel, to make a record of such questions and refusals and to submit the matters to the court for determination, and the notary has the right to continue with the deposition and reserving her ruling on contempt until after the advice of the court.

The second question involved in this matter is what, if any, types of questions may the witness refuse to answer. The court in this instance is writing this opinion, not only for a decision in this particular case but for guidance for future notaries, reporters or commissioners taking depositions out of this court

and for the consideration of any other courts that might feel inclined to so follow the rulings of this case. The question of competency and relevancy of testimony is a complicated matter in which there are many decisions and certainly, it is not possible for a notary public, without being admitted to the practice of law, to be able to rule on all these varied and complicated questions.

On first glance, it would seem that the proper procedure would be to require the witness to answer all the questions, type the answers in the deposition and to have these questions ruled upon by the court at the time the deposition was being read at the trial. This would be a simple answer to all problems of notaries in taking depositions, but unfortunately, matters could develop that would be quite harmful.

While the matter of cross-examination of the defendant in the case has long been the law of Ohio, the first enactment in the year 1853, it was by the court decision, restricted as to the proper type of questions to be asked. There has been some liberalization of the right of the parties to obtain information from the opposite party to the use of interrogatories and through the actions for discovery and in many instances, through pretrial proceedings. All these, however, are under the direct order or supervision of a court. So, it seems to this court that there must be some guideline set down for a notary taking depositions and for the parties being examined; particularly those parties being examined on cross-examination as to what questions or what type of questions must be answered and those which need not be answered.

The first and obvious questions that need not be answered, either in court or on deposition, are those commonly referred to as "privileged communications." These are basically set out in Section 2317.02, Revised Code, which provides that certain communications between attorney and client, physician and patient, clergyman or priest in connection with a confession, and certain communications between husband and wife. Obviously, if they were required to answer to these matters on deposition, the question of "privilege" would be entirely eliminated and this statute would be of absolutely no use.

Another type of question which obviously the witness should not be required to answer, at least under the laws of the

state of Ohio, would be in an automobile damage case where inquiry is made as to the existence of liability insurance and in particular, the amount of liability insurance carried by the party to the suit as, in that case, information would be available to the opposite party and he would not be interested at all whether it was proper to have that question answered during the actual trial of the case.

It seems necessary, therefore, to establish some rule or guideline for the notary public to determine what type of questions he should require to be answered and what should not be required. Bearing in mind, the wording of Section 2317.20, Revised Code, which uses the term, *unlawful refusal to answer of a witness,* it is not the court's intention, nor would it be at all practical to provide a thesis on the rules of evidence, but it does seem to the court that there are certain basic principles that can be set out as guidelines for the use of the notaries taking depositions. Particularly, on cross-examination of a party which, except in very unusual cases, such as the death of the party, the depositions are not used in court or even intended to be used. They are taken for information of the opposing parties and are usually referred to as "fishing expeditions," and while there should be some distinction between this type of deposition and the deposition of parties who are known not to be able to be present at a case and if the information is not obtained by deposition, it will not be obtained at all.

The basic principles which the court would like to lay down in this case are as follows:

On the question of relevancy, the notary should have the discretion to permit a witness on advice of counsel, not to answer the question. The court realizes the question of relevancy is somewhat complicated, but he chooses to take the definition and comment as is outlined in the uniform rules of evidence as was drafted by the National Conference of Uniform State Law and approved by the American Bar Association in 1953. This definition is set forth in rule 1, paragraph (2) and states: "Relevant evidence means evidence having any tendency in reason to prove any material fact." And the comment in paragraph (2) states that "the only test of relevancy is logic. With this simple statement, we must be content. Nothing could be gained in a code of rules by making it a thesis on the subject of

logic. The courts will have to continue to decide what inferences might reasonably be drawn from the knowledge or from perception in or outside of the court room on the basis of common sense. No attempt is made in these rules to catalogue, even generally, what evidence is relevant to what issues.''

There is another definition from a Texas case as is outlined in the digest entitled ''Words and Phrases,'' volume 36A at page 448 which states: ''Whatever naturally and logically tends to establish fact in issue, is 'relevant' and admissible.''

It would, therefore, seem that with this definition of what is relevant and what is irrelevant, depends not so much upon the pronouncements under the law, as it is plain, ordinary logic and common sense and therefore, it is the court's opinion that the notaries, without going into the details of legal niceties, has, or should have that ability. And in any instance, if she is wrong, the parties have their immediate relief by filing interrogatories setting out the same questions and the court could rule on these questions by way of demurrer, if the same is filed. With this procedure, it would keep all the action within the court in which the suit is filed without the necessity of actions in habeas corpus.

The other question in which the court feels the notary public should have the right to permit a witness not to answer, is that of ''privileged communications.'' While this is undoubtedly a legal matter, it is set forth specifically in the statute and should not be too troublesome to any notary public taking the deposition.

The court realizes that there are certain matters along this line such as what is a work product and what is confidential between the attorneys and the clients, particularly in a business organization, will create a great problem, but these again, could be answered by interrogatories or withholding the decision, as in this case, until instructions from the court are given.

The other question is on competency. The question of competency, of course, is strictly a legal question and it is beyond the normal ability and providence of a notary taking a deposition to rule on the competency of a question and it is, therefore, the court's opinion that if there is an objection in the taking of the deposition, to a question because it is not legally competent, in that instance, the witness should be required to answer the

question, reserving the right of the court during the trial to determine whether or not that particular question and answer is competent testimony.

These questions would be involved in the hearsay evidence rule, and the many rules restricting the use of testimony in a trial of a case. No harm can be done by this type of questioning as if the matter is a jury case, it would not be permitted to go to the jury if it was not competent evidence and normally no unfair advantage can be obtained by either party on permitting the answer to a question, whether or not the same is competent under the rules of evidence.

In this connection, the court would like to point out the difference between relevancy and competency, particularly in view of the fact that they are used in connection with the other words, somewhat on the basis that they are synonymous. The term, "the question is irrelevant, immaterial, incompetent and prejudicial," is used almost as one word. The questions of whether it is relevant and competent go to the question of whether or not it is admissible in evidence. Questions of whether it is a material issue or whether the question is prejudicial go not to the question of whether it should be admitted, but to the weight that might be given to a particular question or answer.

The Courts of Appeals in many instances, have ruled that even though a question might have been answered that was legally incompetent if it is not of such material interest, then it would not be ground for reversal, and on the same basis, if a question which is improper has been admitted, that is of great importance, it then becomes possible to reverse the case because that answer was prejudicial to the opposite party.

The court, in arriving at the foregoing conclusions, has studied many cases in the state of Ohio. Starting with the case of *Ex parte Schoepf*, 74 Ohio St. 1, the fourth paragraph of the syllabus of which states that the notary is authorized to punish for a contempt only where a witness has been lawfully ordered to answer a question and goes on to say that such lawful order cannot be made if the question is not material or is incompetent and privileged. The same case in paragraph three of the syllabus states that where a report of a company is turned over to a company attorney, that such report is privileged and the wit-

ness cannot be forced to produce it in the taking of the deposition prior to the trial.

The court likewise takes into consideration that the Supreme Court in the case of *In re Martin, Jr.,* 141 Ohio St. 87, paragraph four of the syllabus, specifically states that paragraph four in the *Schoepf case* is overruled. However, in that overruling, the court states that, "a witness *who is not a party* has no legal right, upon the taking of his deposition, to refuse to answer any question, upon the advice of his attorney, merely because his attorney believes the testimony sought is irrelevant, incompetent or immaterial." It will be noted that this case specifically states that it applies to a witness who is not a party to a case. This leads to some considerable confusion, inasmuch as it makes no statement as to what the procedure is in the case of the deposition of a party to the case and seemingly makes no distinction between the terms, irrelevant, incompetent, or immaterial.

The matter is further confused by the fact that paragraph three of the syllabus of the *Schoepf case* was approved and followed at a later date in the case of *In re Hyde,* 149 Ohio St. 407. While this question relates to privileged communications between a company and its attorneys, it must follow that the party taking the deposition has to rule as to whether or not this type of communication is one that would be a privileged communication.

The case of *In re Keough,* 151 Ohio St. 307, in paragraph three of the syllabus, holds that the mere turning over of information which is relevant, competent and material, cannot be made privileged simply by turning it over to the attorney.

The case of *Ex parte Oliver,* 173 Ohio St. 125, affirms paragraph four of the syllabus in the *Martin case* and states on page 126 and 127:

"We are presented merely with the question of whether a witness may refuse on deposition to produce nonprivileged records, upon the advice of his counsel that the records are not relevant to the litigation in which the deposition is taken.

"The question is not new in Ohio. After some unfortunate vacillation, this court laid the question to rest in *In re Martin, Jr.,* 141 Ohio St. 87."

It seems to this court, however, that in view of the fact that

the *Martin* and *Oliver cases* both specifically pointed out that it applies to a witness who is not a party to a legal proceeding and certainly leaves open the question as to where a witness is a party and being subject to examination on the so-called "fishing expedition" type of question.

Another final case is mentioned and that is the case of *Perfect Measuring Tape Co.* v. *Notheis*, 93 Ohio App. 507, wherein it is stated that the witness on deposition cannot be punished for contempt where the refusal is based upon grounds of personal privilege. Here, again, the question of what is the personal privilege, whether or not the matters were relevant, all of which must be decided by the party taking the deposition. In this particular case, it is a question involving trade secrets which has certainly nothing to do with the privileged communications as are set up in Section 2317.02, Revised Code.

Once again, the courts seem to have confused the matter more than straightening it out in refusing to distinguish between relative matters, as certainly the question of the amount of liability insurance is not relevant. Questions could be asked of a party relating to personal matters of individuals and having no connection with the lawsuit and if he happens to know something that would affect the reputation of some other person and if required to answer, would possibly subject himself to civil suit.

The same way with the notary taking the deposition, if contempt is found and they were in error in that case, there is a possible subjecting of the notary to damages on false arrest. For these reasons, we feel the notary has the inherent right to decide on the question of relevancy on what is logical and if she has doubt, she has the legal right to refer the matter to the court, for consideration, rather than going through the habeas corpus procedure.

In view of the following statements, we will now go into the individual questions in this particular case. Coming to decide the actual matters in this case, as was stated, the action is one on libel and the questions that were refused to be answered were divided into separate categories.

The defendant Vera McMillan had testified that she was a committee of one and acted solely on her own behalf. However, there were numerous questions concerning whether any other

person was involved. These questions briefly were as follows:
1. Did anyone contribute financially to this committee? 2. Were any people solicited for funds for this committee? 3. Did anyone contribute financially to you or to your committee? 4. If anyone did contribute financially to you or your committee, did they know that this ad was to be used? 5. Who was present when you made it up? 6. Did anyone help you make up this ad? There are numerous other similar questions running from page 5 in the depositions through page 13.

The court rules that this is a suit against 2 individuals and whether or not other persons were involved is not relevant to the issue in this case. Therefore, the reporter is instructed not to issue a citation for contempt for the failure to answer the questions set out between pages 5 through 13 of the depositions. As the court rules they are not relevant to this issue and the refusal to answer was not unlawful.

The second category of questions are those commencing on page 14 and running through page 21. All these questions are basically questions of intent and typical of the questions to which answer was refused.

1. You wanted revenge against her, didn't you? 2. So you ran this ad in order to destroy her character, didn't you? 3. You feel that because you feel so strongly on incorporation that anyone who opposes you is emotionally immature, isn't that right? These and the other questions all go upon the question of intent. Inasmuch as intent is a vital element of either libel or slander cases, the court rules that these questions are material to the issue. It is not necessary, at the present time, to rule whether they will be competent at the time of the trial but nevertheless, they must be answered on deposition and if, at the time of the trial, depending upon other testimony, they may or may not be competent, so the reporter is ordered to instruct the witness to answer all the questions set out on pages 14 through 21 of the depositions. It is suggested that the answers be given in writing and signed by the witness and then attached and made a part of the deposition. Upon the failure of the witness to so answer these questions, the reporter is authorized to issue contempt proceedings under the provisions of Section 2317.20 of the Revised Code.

*Judgment accordingly.*